THE SEHAT LAW FIRM, PLC
Cameron Sehat, Esq. (SBN: 256535)
18881 Von Karman Avenue, Suite 850
Irvine, CA 92612
Telephone:  (949) 825-5200
Facsimile: (949) 313-5001
Email: Cameron@sehatlaw.com

Attorney for Plaintiff, Lynda Ayleen Kangas

## UNITED STATES DISTRICT COURT-
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNDA AYLEEN KANGAS, Individually and as Personal Representative of the Estate of ORVILLE THOMAS KANGAS, Deceased;<br><br>              Plaintiff,<br><br>     vs.<br><br>COUNTY OF ORANGE, A Governmental Entity; ORANGE COUNTY SHERIFF-CORONER SANDRA HUTCHENS, Individually and in her Official Capacity; JAGDISH CHOPRA, Individually; and DOES 1 through 10, inclusive,<br><br>              Defendants. | Case No.:  **8:18-cv-2063**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1.  Deliberate Indifference To A Substantial Risk of Harm to Health & Safety-42 U.S.C. § 1983, 8th and 14th Amendment Of the U.S. Constitution)**<br><br>**2. Violation of Title II Of The Americans with Disabilities Act and the Rehabilitation Act**<br><br>**3.  InadequateTraining-42 U.S.C. §1983**<br><br>**4.  *Monell* Claim for Unconstitutional Custom, Practice, Policy-42 U.S.C. §1983**<br><br>**5.  *Monell* Claim for Ratification- 42 U.S.C. §1983)**<br><br>**DEMAND FOR JURY TRIAL** |

**PRELIMINARY STATEMENT**

1.         Plaintiff, Lynda Ayleen Kangas, is the spouse of and successor-in-interest to Orville Thomas Kangas, hereinafter referred to as the "DECEDENT" or "Mr. Kangas". Lynda Kangas is also acting in the capacity of a personal representative of the Estate of Orville Thomas Kangas.

2.         Plaintiff, on behalf of Decedent, an inmate at the Orange County Men's Central Jail, operated by the Orange County Sheriff's Department, brings this action against the County of Orange ("COUNTY"), Orange County Sheriff-Coroner Sandra Hutchens, Jagdish Chopra, and DOES 1 through 10 for monetary damages to redress for the decedent's injuries and death resulting from Defendants' deliberate indifference to his constitutional rights and liberties. Plaintiff bring this action under the Fourteenth and Eighth Amendment of the United States Constitution and the Civil Rights Act of 1871, as codified at 42 U.S.C. § 1983, for injuries and death suffered as a result of the Defendants' substantial and deliberate indifference to Decedent's health and welfare while in their custody.  Plaintiff also states a claim against the Defendants for a failure to establish policies, procedures and training which resulted in the subject incident. This is a civil action seeking damages against the Defendants for committing acts under color of law, and depriving Decedent of rights secured by the Constitution and laws of the United States (42 U.S.C. § 1983) and by Title II of the Americans with Disabilities Act and the Rehabilitation Act. Defendants, County of Orange, and the Men's Central Jail corrections officials and medical staff, management and employees including, Jagdish Chopra, employees of the Orange County Healthcare Agency and DOES "one" through "ten", were deliberately indifferent by, without limiting other acts and behaviors: failing to provide medical care, failing to follow its established medical care and treatment protocol; failing to protect decedent from harm; discriminating against an inmate with an obvious disability, failing to provide necessary and appropriate medical treatment and,

failing to provide necessary and appropriate personnel necessary for the health and welfare of Decedent, who at the time of death, was both a pretrial detainee and convicted inmate at the Central Men's Jail, in the city of Santa Ana, California. Defendants deprived the Decedent's rights as guaranteed by the Fourteenth and Eight Amendment to the Constitution of the United States against cruel and unusual punishment.

3.      The Defendants, and medical officials, management and employees violated the decedent's constitutional rights and were deliberately indifferent by, without limiting other acts and behaviors: (1) deliberately ignoring and failing to heed to decedent's serious medical condition, to wit, decedent's disability including his overall frail condition, his mobility-impairment which subjected him to numerous falls as evidenced by autopsy findings, his hearing impairment which made any of the medical staff's communications to him questionable, his alcohol withdrawal symptoms,(2) relying on other inmates for the care and mobility assistance to Mr. Kangas (3) failing to provide special accommodations to the disabled (4) failing to transfer to a hospital for skilled nursing care; (5) failing to supervise and monitor an inmate known to be a fall-risk (6) failing to provide necessary and appropriate personnel for the health and welfare of the decedent (7) failing to train medical staff in the functional evaluation of elderly inmates (7) failing to implement policies and procedures on functional evaluations. As a consequence of the defendants' actions, Decedent Orville Thomas Kangas suffered debilitating physical and emotional injuries before he suffered from a fatal head injury and ultimately his death, and which action constituted a clear deprivation of his constitutional rights.

**JURISDICTION AND VENUE**

4.      This action is filed under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and the Eighth Amendment to the

United States Constitution, pursuant to 42 U.S.C. § 1983, to redress injuries and the death suffered by the plaintiff's decedent at the hands of defendants.

5.    This Court has jurisdiction over the federal civil rights claim pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over any state-law claims pursuant to 28 U.S.C. § 1367(a).

6.    Jurisdiction and venue are proper in the Central District of California in that the acts of misconduct occurred within the Central District of California with such acts causing the death of the Orville Thomas Kangas.

7.    At all relevant times, the Decedent was an inmate at the Central Men's Jail operated by the Orange County Sheriff's Department.

8.    Venue is proper in this Court pursuant to Title 28 U.S.C. § 1391(b) and (c).

**PARTIES**

9.    At all times relevant to this complaint, Plaintiff, Lynda Kangas, is the Spouse and successor-in-interest to Orville Thomas Kangas, and is an individual residing in Orange, California. Mr. Kangas had been married 47 years to Ms. Kangas at the time of his demise.

10.    At all times relevant to this complaint, Mr. Kangas transitioned from a pre-trial detainee status to that of a convicted inmate status, initially processed at IRC and remained at Central Men's Jail Center, where he died.

11.    Defendant County of Orange, hereinafter known as "COUNTY", is a government entity that acts through individuals to establish its policies and that is capable of being sued under federal law.

12.    The Orange County Sheriff's Department is a duly organized public entity, form unknown, existing under the laws of the State of California is responsible for supervising and operating the Central Men's Jail facility ("CMJ"), a correctional division, and ensuring the health and safety of all inmates and pretrial detainees incarcerated in its corrections facilities.

13.    The Orange County Healthcare Agency (OCHA) at all times relevant to this complaint was an entity operating under the jurisdiction of defendant County of Orange duly organized under the laws of the State of California

14.    Defendant Sandra Hutchens is the duly appointed Sheriff-Coroner of the Orange County Sheriff-Coroner's Department and is vested with policy making authority and policy enforcement authority for Defendants County of Orange and the Orange County Sheriff's Department.

15.    Defendant Jagdish Chopra, hereinafter referred to as "CHOPRA", is an employee of the Orange County Healthcare Agency, a subsidiary of Defendant County of Orange, and at times relevant to the complaint was employed in the capacity of a registered nurse at CMJ.  Defendant CHOPRA is a duly authorized employee and agent of Orange County Healthcare Agency, and was acting within the course and scope of her perspective duties as inmate medical staff in the CMJ with the complete authority and ratification of her principal, the County of Orange.  Defendant CHOPRA is being sued in her/his individual capacity.

16.    The Orange County Health Care Agency is a division of County of Orange and responsible for administering medical care through its subdivision of Adult Correctional Health Services to inmates at the CMJ.

17.    DOES 1 through 10 are employees of defendant County of Orange, and at all times relevant to the complaint were employed in the capacity of staff at CMJ.  They are duly authorized employees and agents of the County of Orange, and were acting within the course and scope of their perspective duties as staff in the Central Men's Jail with the complete authority and ratification of their principal, Defendant County of Orange.  DOES 1 thru 10 are sued in their individual and official capacities.

18.    At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every defendant herein.

## FACTUAL ALLEGATIONS & TIMELINE OF EVENTS

19.     At all relevant times to this complaint, Ms. Kangas was a retired bookkeeper, and the spouse of Orville Thomas Kangas for 47 years.

20.     The decedent, Orville Thomas Kangas, was arrested and booked at the CMJ for a misdemeanor vandalism charge on May 13, 2017. The subject of the vandalism charge was his own property, a couch, which begs the question as to why the charge was brought forth to begin with since one cannot vandalize their own property.

21.     Mr. Kangas had no criminal record prior to his incarceration at the CMJ. Mr. Kangas was 69 years of age and a Vietnam veteran.

22.     Mr. Kangas' status was that of a pre-trial detainee from the time he was booked on May 13, 2017 until the time he took a plea to a misdemeanor charge of vandalism on May 17, 2017, and was, thus guaranteed the right, under the due process clause of the Fourteenth Amendment, to proper medical care.

23.     From May 17, 2017 until his demise on May 21, 2018, Mr. Kangas was deemed to be a prisoner who technically had already been convicted of a crime, thus, he was guaranteed the right to be protected from cruel and unusual punishment and the right to proper medical care under the Eighth Amendment of the United States Constitution.

24.     On **May 13, 2017 at approximately 8:40 p.m.,** Mr. Kangas was booked at CMJ.  Shortly thereafter, at approximately **11:30 p.m.**, Mr. Kangas began vomiting blood and showed signs of alcohol withdrawals.

25.     **On May 13, 2017 at approximately 11:44 p.m.**, paramedics were called in order to hospitalize Mr. Kangas at the Orange County Global Medical Center (OCGMC). Mr. Kangas was admitted for alcohol detoxification, treated for esophageal banding, and cirrhosis.

26.     **On May 16, 2017, at approximately 10:33 p.m.**, Mr. Kangas was discharged back to CMJ. Upon his return, Mr. Kangas was housed in the MCJ infirmary for close monitoring due to his alcohol withdrawals.

27.     On **May 16, 2017,at approximately 10:33 p.m.,** Nurse Vanessa Monroy performed a mental health screening during which time Mr. Kangas was assessed with the following: he had been a current patient at the Long Beach VA for Post Traumatic Stress Disorder for the past 2 years, was prescribed Lexapro, daily at 20 mg, and was hearing-impaired. Although nurse Monroy' notes do not reflect, Mr. Kangas also appeared frail and suffered from obvious mobility and gait impairments.

28.     According to the *Americans Against Disabilities Act*, *42 U.S.C. 12102(1),* "Disability" is defined as having a physical or mental impairment that substantially limits one or more major life activities of such individual, a record of such an impairment or being regarded as having such an impairment.

29.     According to the Bureau of Justice Statistics Report, 40% of local jail inmates report having at least one disability. *Disabilities Among Prison And Jail Inmates, 2011-2012 (DOJ) Publication December 2015*.

30.     According to the Department of Justice, detention and correctional facilities are unique establishments under Title II. Inmates cannot leave the facilities and must have their needs met by the correctional system, including needs relating to their disabilities. If the detention and correctional facilities fail to accommodate prisoners with disabilities, these individuals have little recourse, particularly when the need is great (e.g., an accessible toilet, adequate cathethers) *Section-by-Section Guidance and Analysis of ADA Regulations*.

31.     As of all dates relevant to this complaint, Mr. Kangas was disabled due to several limitations including suffering from significant mobility impairment, hearing impairment, impairment from alcohol withdrawal, and

impairment due to his Post-Traumatic-Stress-Disorder as a former Vietnam Combat Marine.

32.    **On May 18, 2017, time unknown,** L.V.N. Abigail Constantino interviewed Mr. Kangas during a Functional Performance Evaluation, and assessed him with a mobility impairment, specifically requiring assistance walking and for general mobility such when entering and exiting his cell and getting about.

33.    **On May 18, 2017, at approximately 10:34 p.m.**, a deputy brought Mr. Kangas to the CMJ infirmary indicating that Mr. Kangas was having a hard time going in and out of his bunk, had mobility issues, unsteady gait and is hard of hearing, but no report of any falls.  Nurse Ralph Guangco performed a standard nursing assessment and observed a "frail" Mr. Kangas, an unsteady gait, noted that he needed a walker, and indicated that Mr. Kangas told him he normally uses a hearing aids which he was unable to retrieve as he was arrested. Nurse Guangco consulted with Dr. Thomas Le and notified him of "safety issues with mobility, an unsteady gait, and the fact that Mr. Kangas was a fall risk". Dr. Le approves the use of a wheelchair as overflow.

34.    **On May 19, 2017, at approximately 8:46 a.m.**, physician Ann Tran evaluated Mr. Kangas further noting that he was ambulating very slowly and planned on providing him a walker.

35.    **On May 19, 2017, at approximately 2:30 p.m.**, Mr. Kangas was evaluated again by now Defendant Jagdish Chopra, who observed his frail condition, noting he had a very slow gait with a mild limp. According to this Soap notes, he planned on further observing Mr. Kangas due to his mobility impairment.

36.    **On May 19, 2017 at approximately 10:55 p.m.**, Nurse Lena Chung evaluates Mr. Kangas and assess him as a "risk for injury" patient with a plan to continue to monitor him.

37.    **On May 20, 2017 at approximately 10:42 p.m.,** Nurse Jagdish Chopra performs a CIWA assessment (Clinical Institute Withdrawal Assessment for Alcohol) evaluation for his alcohol withdrawal and notes a score of "2" on her record. Mr. Kangas was observed to have tremors, and was further noted to be eating his lunch in his bed. The nurse indicated that he will continue to monitor the patient, although given the circumstances to follow, very little monitoring had actually been performed.

38.    **On May 21, 2017 at approximately 9:58 a.m.,** physician Michael Lam followed up with the patient, and based on his observation, noted that Mr. Kangas was at risk for a fall. He further advised the patient to get up slowly from the bunk and further indicated that continued monitoring of the patient was necessary.

39.    **On May 21, 2017 at approximately 1:19 p.m.,** based upon the Orange County District Attorney's review of a jail surveillance video footage, Mr. Kangas slipped and fell to the ground while attempting to sit on his bed. Two unidentified inmates can be seen on the video assist Mr. Kangas after he fell. Upon information and belief, it did not appear that any nurse nor physician came to Mr. Kangas' help, in light of the medical staff being on notice of Mr. Kangas' various disabilities including PTSD, his mobility impairment, his unsteady gait, and his hearing impairment.  It further appears that other inmates were in charge of Mr. Kangas' welfare, and not the medical staff at the Orange County Men's Central Jail.

40.    It is unknown whether Mr. Kangas suffered a head injury during this first or second fall which was captured on the video.

41.    **On May 21, 2017 at approximately1:33 p.m.,** again based upon the Orange County District Attorney's review of a jail surveillance video footage, Mr. Kangas is seen stumble and fall to the ground for a second time as two inmates can be seen escorting him to the bathroom. Both inmates immediately help him

back up, at which point an unknown nurse can be seen place Mr. Kangas into a wheelchair. It is unknown whether Mr. Kangas suffered a head injury during this second fall captured on the video.

42.     On **May 21, 2017 at approximately 1:25 p.m**., Nurse Chopra called a "man-down", after Mr. Kangas came to the window of the infirmary complaining of  "splitting headaches". Mr. Kangas was then observed to make his way back to his bed with an unsteady gait, escorted by another inmate. Nurse Chopra took his vitals and noted his pupils were within normal limits, however, Mr. Kangas was unable to speak but apparently was able to nod. Nurse Chopra assessed him as having an Altered Mental Status. His vitals at this point were clearly abnormal at 168/96 blood pressure, pulse at 108 (tachycardia), respiratory rate at 20. Mr. Kangas, again assisted by another inmate went to the bathroom but ended up urinating all over himself. It is unclear whether paramedics were called at this point, in light of the "man down" indicated in the nurse' notes.

43.     On **May 21, 2017, at approximately 2:00 p.m.,** based on Nurse Chopra's SOAP notes, his vital remained abnormal at  168/96 blood pressure, pulse at 108 (tachycardia), respiratory rate at 20, with a Mr. Kangas who appeared to be in "deep sleep" and was "hard to arouse" yet remarkably displayed "good upper extremities strength".  Nurse Chopra did acknowledge a sudden change in his condition and noted that Mr. Kangas was not responding well. At this point, his vitals were now 182/95, pulse at 118 and respiration at 22, and so notified registered Nurse practitioner Ursua who advised him to call 911 and summon paramedics. An intraveneous injection was started, with paramedics transporting Mr. Kangas to Global Medical Center at approximately 2:12 p.m.

44.     Nurse Chopra' "1:25 pm" and "2:00 pm" event notes were inputted into the system at 2:42 pm and 2:54 pm, respectively.

45.     Per the paramedics records, *unlike* Nurse Chopra's noted "good upper extremities strength", Mr. Kangas was exhibiting decorticate posturing on

one side of his body, which is an involuntary and abnormal stiff posture of the body, further calling into question the veracity of Nurse' Chopra' noted observations.

46.    Upon information and belief, Mr. Kangas sustained a lethal blunt force injury to his head, as a result of falling, due to his disabilities including but not limited due to his mobility impairment, his unsteady gait, his frail physical condition, his hearing impairment, and his PTSD, said trauma to have occurred sometime between May 18, 2017 and 1:25 p.m. on May 21, 2017.

47.    Once at Global Medical Center, he was diagnosed with a loss of consciousness due to an intracranial hemorrhage. Due the severity of his brain bleed, Mr. Kangas was given a poor prognosis and remained in a vegetative state. He was taken off life support on May 23, 2017 at 1:30 p.m.

48.    An autopsy was conducted and revealed that Mr. Kangas had multiple contusions and bruising to his chest, arms and to his lower extremities, as well as injuries to the brain which were all consistent with having fallen numerous times during his short stay at CMJ. The final cause of death was due to bleeding of the brain from blunt force injury to the head.

49.    In summary, Mr. Kangas who was due to be released on May 22, 2017, according to his credit-for-time-served sentencing scheme, experienced an agonizing period of incarceration after being  discriminated against based on his various disabilities, and ultimately sustained a severe head injury and ensuing death. Mr. Kangas was under the custody and care of the CMJ staff who failed him as the entrusted medical professionals of the medical unit in Central Men's Jail. They failed at the one responsibility they took an oath to uphold: to care for the elderly and disabled patients.

50.    Mr. Kangas exhibited numerous symptoms of his disabilities which would have been obvious to any lay persons, but required at minimum continuance visual observation, but also hospitalization and a level acute of care

which was beyond the capabilities of the defendants. The severe limitations which preceding his death had not ameliorated but rather worsened, and should have been obvious not only to an untrained lay person, but certainly to the medical professionals in charge of his care.

51.    Defendant COUNTY's correctional system failed Mr. Kangas in the worst of possible of ways, that is, not only did it take away his freedom, for a petty crime, but it also took away his life as well and the precious golden years he would have spent with his wife of 47 years.

52.    Correctional and medical staff  have three basic constitutional obligations toward those who are involuntarily confined in their custody: access to food, safety and medical care. Tragically, Mr. Kangas was denied his constitutional right to safety and medical care.

53.    Orville Thomas Kangas was 69 years of age when he passed away.

## FIRST CLAIM FOR RELIEF
## Deliberate Indifference to a Substantial Risk of Harm
## to Safety and Health -8th & 14th Amendment
### (Against Defendants CHOPRA and DOES 1-10)

54.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-3, and 19 through 53 of this Complaint with the same force and effect as if fully set forth herein.

55.    From the time decedent was booked at Central Men's Jail until the time of death, the Defendants repeatedly denied Mr. Kangas adequate medical care and accommodation for his numerous disabilities in repeated violation of his 8th and 14th Amendment constitutional rights.

56.    All Defendants were informed that Mr. Kangas was a fall-risk, had both a mobility and a hearing impairment, and that his suffered from Post Traumatic Stress Disorder,  an urgent medical need and required either close

monitoring or a higher level of care. Mr. Kangas suffered a fatal head injury during one of his numerous falls while at the MCJ, two of which time were caught on surveillance video. His demise could have been prevented had the defendants actually closely monitored the patient and/or had sent him out to a facility capable of caring for the disabled.

57.    It is an undisputed fact that Defendants knew there was a substantial risk to Mr. Kangas' health and safety, as they all acknowledged based upon the medical records,  that he was a fall risk, that his was frail, and suffered from significant mobility and hearing impairments.

58.    It was objectively unreasonable for the Defendants to ignore the numerous objective signs and symptoms of a serious medical condition, to wit a mobility and hearing impairment, and an overall incapacity to move about the jail, which based upon the medical records, said symptoms were present as soon as he was discharged back from Global medical Center.  Any diligent registered nurse or medical doctor would have been apprised of the serious impending medical condition including but not limited to his disabilities, and promptly taken measures to either continuously monitor him, or request a higher level care capable of addressing Mr. Kangas' disabilities.

59.    As a result of the repeated denial of proper medical care, Mr. Kangas spent his time at CMJ in unnecessary and excruciating pain, suffering in agony.

60.    The denial of medical treatment exacerbated Mr. Kangas' condition to the point where his life was placed in jeopardy.

61.    The Defendants, by ignoring Mr. Kangas in this situation and by failing to provide proper medical attention, acted with deliberate indifference to a serious health condition and the medical needs of Mr. Kangas.

62.    If the decedent is deemed to be a convicted inmate, the Defendants by their act of deliberate indifference in failing to provide medical care to treat the

decedent's serious medical condition, the conduct thereof constitutes cruel and unusual punishment in violation of the Eighth Amendment of the Constitution.

63.      If the decedent is deemed to be a pretrial detainee, the Defendants by their act of deliberate indifference in failing to provide medical care to treat the decedent's serious medical condition, the conduct thereof constitutes cruel and unusual punishment in violation of the Due Process Clause of the Fourteenth Amendment of the Constitution.

64.      All Defendants were deliberately indifferent to the serious medical needs of Mr. Kangas. It should be adequately clear that a reasonable medical practitioner would comprehend that by denying medical care and access to disability accommodations, Mr. Kangas was exposed to undue suffering or threat of tangible residual injury, which, in the end, proved to be fatal. The Defendant jail officials including DOES 1 thru 10, intentionally denied Mr. Kangas proper medical care by knowing he was a fall risk yet failing to monitor him, by failing to treat him, and by failing to transfer him to a higher level of care, causing him to unduly suffer for days before sustaining a fatal head injury.

65.      Had the Defendants and their employees, agents, and servants, not acted with deliberate indifference to the obvious and serious health needs of Mr. Kangas and provided prompt medical attention, he would not have died.

66.      Mr. Kangas' death was easily avoidable.

67.      Such acts and omissions of the Defendants violated Mr. Kangas' constitutional rights guaranteed under 42 U.S.C. § 1983, and the Eighth and Fourteenth Amendments to the United States Constitution. The defendants knew that by failing to treat the urgent symptoms of a heart condition, that it would lead to a fatality, but not before Mr. Kangas endured significant pain and agony during the period preceding his death.

68.      Accordingly, Defendants each are liable to Plaintiff for survival damages including but not limited to loss of life, loss of enjoyment of life, pain

and suffering, loss of earning capacity, denial of his constitutional rights, and for compensatory and punitive damages under 42 U.S.C. § 1983.

### SECOND CLAIM FOR RELIEF
### Violations of Title II of the Americans with
### Disabilities Act and the Rehabilitation Act

## (Against Defendant COUNTY and DOES 1-10)

69.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-3, and 19 through 53 of this Complaint with the same force and effect as if fully set forth herein.

70.     Plaintiff is making a claim for disability discrimination against Defendant COUNTY and, pursuant to 42 U.S.C. § 1983, for violating Title II of the Americans with Disabilities Act (ADA) (public entities).Title II of the ADA prohibits disability-based discrimination by any public entity. *See* 42 U.S.C. §§ 12131-12132; 28 C.F.R. § 39.130; and 28 C.F.R. §35.130.

71.     Section 504 of the Rehabilitation Act prohibits discrimination against an individual based on disability by any program or entity receiving federal funds. *See* 29 U.S.C. §§794(a), (b)(1)(A), (b)(1)(B), and (b)(2)(B).

72.     These disability anti-discrimination laws impose an affirmative duty on public entities to create policies or procedures to prevent discrimination based on disability.

73.     Mr. Kangas was disabled as defined in 42 U.S.C. §12102 and 42 U.S.C. §§12131, 28 C.F.R. §§35.108, as he suffered a physical impairment that substantially limited one or more of his major life activities.

74.     Defendant COUNTY is a program or entity that receives federal financial assistance.

75.     Defendant COUNTY is a public entity as defined by Title II of the ADA.

76.    Defendant COUNTY's jail, Orange County Central Men's Jail, is a facility and its operation comprises a program of service for purposes of Title II of the ADA.

77.    Mr. Kangas was an individual qualified to participate in or receive the benefit of COUNTY's services, programs, or activities.

78.    Mr. Kangas was abused because of his disabilities by COUNTY's agents and employees at MCJ.

79.    Mr. Kangas was abused when he was denied medical treatment for condition he suffered due to his disability, which was known to Defendant COUNTY and its agents and employees, and the abuse including denial of proper nursing assistance to move about his cell, such as getting up to use the bathroom facilities; the denial of any type of hearing aid or the assistance of sign language interpreter to meaningfully communicate with Mr. Kangas, the denial of access to a wheelchair and walker, the lack thereof was apparent when several inmates were seen on the video footage physically assist Mr. Kangas in moving about his cell during the hours prior to losing consciousness. Such abuse and denial of medical treatment by Defendant COUNTY and its agents and employees was in spite of Mr. Kangas' disability. Such abuse constitutes discrimination against individuals based on their disability in violation of the Rehabilitation Act and Title II of the ADA.

80.    Defendant COUNTY failed to provide any meaningful medical services to Mr. Kangas specifically for the care and treatment of his mobility impairment, his hearing impairment and his overall weak state. Additionally, the extent any cursory treatment of Mr. Kangas occurred, for example, giving him Tylenol in the time leading up to his death, was so grossly incompetent and inadequate that it shocks the conscience and showed a deliberate indifference and reckless disregard for Mr. Kangas' disability.

81.     Defendant COUNTY showed a deliberate indifference towards Mr. Kangas and his medical needs when:

    a.     COUNTY medical staff failed to provide any management and treatment specific to his medical needs and activities of daily living including his mobility impairment, despite obvious presentations of the condition.

    c.     COUNTY medical staff failed to monitor Mr. Kangas despite each and every provider acknowledging the fact that he posed a high risk of fall and injury to himself due to his disability, but made no attempt to assist him performing his basic needs such as moving around the cell and going to the bathroom.

    d.     COUNTY showed a bias towards treating his mobility and hearing impairment when they delegated their responsibility to non-medically trained inmates, and when they failed to actually monitor him, and when they failed to send him to an outside facility capable of providing Mr. Kangas a higher level of care in response to his disabilities.

    h.     COUNTY refused to refer Mr. Kangas to higher level of care when he was evident it could not adequately care for himself due to his disabilities.

82.     On May 21, 2017, at 1:25 p.m., despite declaring a "man-down", or a medical emergency, nurse Chopra failed to immediately summon paramedics until another 35 minutes passed and Mr. Kangas' condition further deteriorated.

83.     The deliberate indifference COUNTY employees showed towards Mr. Kangas for the treatment of his disability was especially apparent when COUNTY medical staff permitted him to be left unmonitored by the medical staff when it was and should have been objectively obvious and apparent that he needed

medical attention, including access to disability accommodations or to be sent out to a higher level of medical care.

84.     Had Defendant COUNTY and its employees not shown a deliberate indifference towards treating Mr. Kangas' disability, and provided him the care and treatment he needed, he would not have suffered from a fatal head injury, which is attributed to his mobility impairment, hearing impairment, and his overall weak physical state.

85.     COUNTY's agents and employees discriminated against Mr. Kangas by abusing him specifically because of his disability and by excluding him from treatment programs by subjecting him to discrimination.

86.     COUNTY's agents and employees discriminated against Mr. Kangas by abusing him specifically when they denied him medical treatment when it was obvious and apparent that he was suffering from his disabilities and COUNTY's agents and employees continued to deny him the medical treatment it was obvious he needed at the time. It was objectively apparent that Mr. Kangas was in desperate need of emergency medical care, including care and treatment specific to mobility and hearing impairment. It was objectively apparent that leaving Mr. Kangas, a known fall-risk, to move around unassisted posed a high risk to his safety and health

87.     The abuse of Mr. Kangas at CMJ was carried out by Defendant COUNTY's agents and employees at CMJ while acting within the course and scope of their employment with COUNTY.

88.     Defendant COUNTY is liable for the action of its agents and employees when they committed the violations of the Rehabilitation Act and Title II of the ADA alleged herein.

89.     COUNTY discriminated against Mr. Kangas by failing to provide a non-discriminatory, safe treatment environment at CMJ generally, and within the medical unit, and, as a result, Mr. Kangas died.

90.      As a result of Defendant COUNTY's deliberate indifference to ongoing discrimination against Mr. Kangas as a result of his disability, Mr. Kangas suffered a preventable death that could have and should have been avoided had Defendant COUNTY complied with the Rehabilitation Act and Title II of the ADA.

91.      WHEREFORE, on this Count, as a result of the tragic and untimely death of Orville Thomas Kangas in violation of Title II of the ADA and the Rehabilitation Act, Plaintiff, the Estate of Orville Thomas Kangas, has sustained the following damages, and therefore seeks the same from Defendant COUNTY:

A.      The Estate of Orville Thomas Kangas seeks the following damages:

a.      Loss of prospective net Estate accumulations

b.       Loss of disability earnings of Mr. Kangas from the date of his death, less lost support of his Survivors excluding contributions in-kind with interest; and

c.      Mr. Kangas' pain, suffering, emotional distress, loss of life and enjoyment of life. Plaintiff respectfully requests that this Court award Plaintiff Estate of Orville Thomas Kangas the aforementioned damages, survival damages  any and all other compensatory damages suffered by the Plaintiff, attorneys' fees, all prejudgment interest allowable under law, and such other and further relief as the Court deems just and equitable.

## THIRD CLAIM FOR RELIEF
## Inadequate Training-42 U.S.C. §1983
### (Against Defendant COUNTY)

92.      Plaintiff repeats, re-states, and incorporates each and every allegation in paragraphs  1-3, and 19 through 53 of this Complaint with the same force and effect as if fully set forth herein.

93.     Defendant COUNTY knew that Mr. Kangas was suffering from a known disability and that the CMJ medical unit was not equipped to care for elderly disabled inmates. Given the known limitations of the CMJ medical infirmary it was obvious that CMJ medical staff would need special training in order to care adequately for disabled patients and to assess whether such patients should be transferred to an outside facility in order to accommodate for the disability.

94.     Nurses CHOPRA and DOES 1-10, had not been trained adequately in monitoring, documenting and assessing patients' medical conditions, including known disabilities and physical limitations, within the confines of a limited-care facility such as the CMJ infirmary, and that this failure to train led to a substantial risk of injury to Mr. Kangas, resulting in his death.

95.     Despite COUNTY's general jail policy requiring that medically unstable and disabled inmates be monitored and accommodated for, or in the alternative, to be transferred out to a hospital for acute care, COUNTY had failed to train the CMJ doctors and nursing staff adequately as to recognize the urgency with which medically unstable and disabled inmates must be seen and assessed in light of the CMJ's limited medical facilities.

96.     Defendant COUNTY had a policy of relying on medical professionals without training them on how to implement proper procedures for documenting, monitoring and assessing inmates for medical instability within the confines of the CMJ amounting to deliberate indifference.

97.     As a result of the COUNTY's failure to adequately train and implement policies, Orville Thomas Kangas was caused undeserved pain and agony all culminating to this death on May 22, 2017.

# FOURTH CLAIM FOR RELIEF

## Liability for Unconstitutional Custom, Practice or Policy

### (42 U.S.C. § 1983) (Against Defendant COUNTY)

98.     Plaintiff hereby repeats, re-states, and incorporates each and every allegation in paragraphs  1-3, and 19 through 53 of this Complaint with the same force and effect as if fully set forth herein.

99.     On and for some time prior to May 21, 2017, (and continuing to the present date) Defendants County of Orange deprived Plaintiff's decedent of the rights and liberties secured to him by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, acting with reckless and deliberate indifference to the rights and liberties of  Plaintiff's decedent and of persons in his class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized county custom, policy, and practice of:

(a) Acting deliberately indifferent to the serious medical needs and disabilities of inmates when defendants failed to take any meaningful corrective measures despite being previously placed on notice of their egregious practices resulting in prior in-custody deaths, some of which have been the subject of other civil rights lawsuits against the county such as *Patrick Russell et a. v. County of Orange et al. 8:17-cv-00125-JLS-DFM;  Mary Gordon v. County of Orange et al.; Case no.:* SACV14-01050 CJC (DFMx)

Some past in-custody deaths involving deliberate indifference to serious medical conditions include the death of inmates, *Patrick Russell Jr., Matthew Shawn Gordon, Robert Eric Oropeza (OCSD Dr # 11-009),Cynthia Kaye Drury-OCSD DR # 10-240833); Keith Eric Files (OCSD Dr # 10-221574); Marcus Dean Bell (OCSD DR# 10-229570) ; Gregorio Aguilar Torres (OCSD Dr no:10-48907)*

(b)  Failing to implement policies and procedures on symptom recognition and assessment for disabilities including mobility and hearing impairment

(c)  Routinely failing to train medical staff on the symptoms and assessment of inmates suffering from disabilities and associated conditions requiring disability accommodation;

(d)  Inadequately supervising, training, controlling, assigning, and disciplining employees including medical staff stationed at Central Men's Jail;

(e)  Maintaining grossly inadequate medical procedures and protocols in the event disabled inmates pose a high risk of fall;

(f)  Withholding not only urgent life sustaining medical care, but routine care to disabled inmates in need of medical care;

100.    By reason of the aforementioned policies and practices of Defendants COUNTY of Orange, Plaintiff has suffered the loss of her husband, Orville Thomas Kangas.

101.    Defendant COUNTY of Orange, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies.  Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiff, and other individuals similarly situated.

102.    By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants County of Orange and Sandra Hutchens, acted with an intentional, reckless, and callous disregard for the well-being of decedent and his constitutional as well as human rights.

Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants County of Orange and Sandra Hutchens were

affirmatively linked to and were a significantly influential force behind the decedent's death.

103.     Accordingly, Defendants County of Orange, each are liable to Plaintiffs for survival damages, loss of life, loss of enjoyment of life, pain and suffering, compensatory damages and punitive damages under 42 U.S.C. § 1983.

## FIFTH CLAIM FOR RELIEF
### *Monell* Claim-Ratification (42 U.S.C. §1983)
### (Against Defendants COUNTY and DOES 8-10)

104.     Plaintiff hereby repeats, re-states, and incorporates each and every allegation in paragraphs 1-3, and 19 through 53 of this Complaint with the same force and effect as if fully set forth herein.

105.     Defendants CHOPRA and DOES 1-7 acted under color of law.

106.     The acts of Defendants deprived Mr. Kangas and Plaintiff of their particular rights under the United States Constitution.

107.     Upon information and belief, after a post-mortem medical staff meeting, a final policy maker, acting under color of law, who had final policymaking authority concerning the acts of Defendants CHOPRA and DOES 1-7, ratified Defendant CHOPRA's and DOES 1-7's acts and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of Defendant CHOPRA's and DOES 1-7's acts.

108.     Upon information and belief, a final policy maker has determined (or will determine) that the acts of Defendant CHOPRA and DOES 1-7 were "within policy".

109.     By reason of the aforementioned acts and omissions, Plaintiff has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance and past and future support of Mr. Kangas. The aforementioned

acts and omissions also caused Mr. Kangas' pain and suffering, his loss of enjoyment of life, his loss of life and his death.

110.     Accordingly, Defendant COUNTY and DOES 8-10 each are liable to Plaintiff for compensatory damages under 42 U.S.C. §1983.

111.     Plaintiff brings this claim as a successor-in-interest to DECEDENT, and seeks survival damages and wrongful death damages under this claim. Plaintiff also seeks punitive damages and attorney's fees under this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment in their favor and against all Defendants, and DOES 1 through 10 inclusive, as follows:

1.     For all survival and compensatory damages amounting to no less than $5,000,000;

2.     For punitive damages against the individual defendants in an amount to be proven at trial;

3.     For interest;

4.     For reasonable costs of this suit and attorneys' fees per 42 U.S.C. §1988; and

5.     For such further other relief as the Court may deem just, proper, and appropriate.


Date: November 18, 2018            THE SEHAT LAW FIRM, PLC


By: /s/ Cameron Sehat_____
Attorney for Plaintiff
Lynda Ayleen Kangas

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.


Date: November 18, 2018                    THE SEHAT LAW FIRM, PLC


By: *: /s/ Cameron Sehat*_____
Attorney for Plaintiff
Lynda Ayleen Kangas