NORMAN J. WATKINS (SBN 87327)
nwatkins@lynberg.com
S. FRANK HARRELL (SBN 133437)
sharrell@lynberg.com
TAMARA M. HEATHCOTE (SBN 193312)
theathcote@lynberg.com
**LYNBERG & WATKINS**
A Professional Corporation
1100 Town & Country Road, Suite 1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

Attorneys for Defendants, COUNTY OF ORANGE, JAGDISH CHOPRA, ANH TRAN, LENA CHUNG, and MICHAEL LAM

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNDA AYLEEN KANGAS, Individually and as Personal Representative of the Estate of ORVILLE THOMAS KANGAS, Deceased,<br><br>      Plaintiff,<br><br>v.<br><br>COUNTY OF ORANGE, A Governmental Entity; JAGDISH CHOPRA, Individually; and DOES 1 through 10, Inclusive<br><br>      Defendant. | Case No. 8:18-CV-02063-MCS-DFMx<br><br>*Assigned for All Purposes to:*<br>*Hon. Mark C. Scarsi*<br><br>**DEFENDANTS' MOTION IN LIMINE NO. 3**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 3 TO EXCLUDE ANY REFERENCE TO, MENTION OF, EVIDENCE OF, OR TESTIMONY REGARDING IN-CUSTODY DEATHS AND/OR SUICIDES IN THE SAN DIEGO COUNTY JAILS, MEDIA REGARDING SAME, OR CASES TO WHICH DEFENSE EXPERT DR. ALFRED JOSHUA IS A NAMED PARTY; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF TAMARA M. HEATHCOTE; EXHIBITS**<br><br>Date:    April 19, 2021<br>Time:    2:00 p.m.<br>Location: Ctrm. 7C<br><br>Complaint Filed:  11/19/2018<br>FAC Filed:      12/24/2018<br>Trial:          05/04/2021 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 19, 2021 at 2:00 p.m. in Courtroom C7 of the above referenced courtroom, Defendants COUNTY OF ORANGE, JAGDISH CHOPRA, ANH TRAN, LENA CHUNG, and MICHAEL LAM ("Defendants") will, and hereby do, move this Court for an *in limine* order excluding Plaintiff Lynda Kangas ("Plaintiff") from referencing, mentioning, offering evidence of, or eliciting testimony regarding in-custody deaths and/or suicides in the San Diego County jails, any media or press coverage regarding same, and any cases to which defense expert Dr. Alfred Joshua is named as a party.

Defendants also move this Court to instruct all parties and their counsel:

1.      Not to mention, refer to, or attempt to convey to the jury in any manner, either directly or indirectly, any of the facts or issues contained in this motion without first obtaining permission of this court outside the presence and hearing of the jury;

2.      Not to make any reference to the fact that this Motion has been filed; and

3.      To warn and caution each and every one of the witnesses to strictly follow the same instruction.

## DEFENDANTS' MOTION IS MADE ON EACH OF THE FOLLOWING GROUNDS:

This Motion is made on the grounds that all of the above-described matters are irrelevant, will confuse or mislead the jury, and would result in an undue consumption of time.  See, Fed. R. Evid, 401, 403.  Regarding the media articles or press coverage related to alleged in-custody deaths or suicides, these materials are hearsay that otherwise lack evidentiary foundation, and are properly excluded as such.  See, Fed. R. E. 602, 801, 901.  And any questioning about Dr. Joshua's involuntary participation in separate lawsuits as a named party constitutes inadmissible character evidence that does not speak to the admissibility or weight of his testimony as an expert witness.  See, Fed. R. of Evid. 404.

MOTION IN LIMINE NO. 3 TO EXCLUDE ANY REFERENCE TO, MENTION OF, EVIDENCE OF, OR TESTIMONY REGARDING IN-CUSTODY DEATHS AND/OR SUICIDES IN THE SAN DIEGO COUNTY JAILS, MEDIA REGARDING SAME, OR CASES TO WHICH DEFENSE EXPERT DR. ALFRED JOSHUA IS A NAMED PARTY

1    This Motion is based upon this Notice, the attached Memorandum of Points and

2    Authorities, Declaration of Tamara M. Heathcote, Exhibits, and on such further oral

3    and documentary evidence that may properly come before the Court.

4    DATED:  April 5, 2021                    Respectfully submitted,

5                                             **LYNBERG & WATKINS**

6                                     By:  */s/ Tamara M. Heathcote*
                                          **S. FRANK HARRELL**
7                                         **TAMARA M. HEATHCOTE**
                                          Attorneys for Defendants
8                                         COUNTY OF ORANGE, JAGDISH
                                          CHOPRA, ANH TRAN, LENA CHUNG,
9                                         and MICHAEL LAM

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION IN LIMINE NO. 3 TO EXCLUDE ANY REFERENCE TO, MENTION
OF, EVIDENCE OF, OR TESTIMONY REGARDING IN-CUSTODY DEATHS
AND/OR SUICIDES IN THE SAN DIEGO COUNTY JAILS, MEDIA
REGARDING SAME, OR CASES TO WHICH DEFENSE EXPERT DR. ALFRED
JOSHUA IS A NAMED PARTY

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   PRELIMINARY STATEMENT

3

4

5

6

7

8

This action arises out of a volcanic, all-day fight between one Orville Thomas Kangas ("Thomas Kangas" or "Decedent") and his wife (Plaintiff herein) which culminated in Decedent's drunken destruction of his spouse's property with a long-bladed knife. At Plaintiff's insistence, Decedent was arrested, prosecuted and convicted. Thomas Kangas arrived at the Orange County Men's Central Jail ("MCJ") on May 13, 2017.

9

10

11

Decedent presented at the Jail with a history of severe health problems arising from years of severe alcohol abuse. These pre-existing health problems proved to be fatal during his incarceration.

12

13

14

15

16

17

18

19

Shortly after arriving at MCJ, Thomas Kangas began vomiting blood.  Paramedics were called and Thomas Kangas was rushed to Orange County Global Medical Center where he was treated for esophageal bleeding, an outgrowth of his liver cirrhosis and his admitted four-day alcohol stupor leading up to his arrest.  Thomas Kangas was released from the hospital on May 16, 217 with no restrictions and returned to MCJ. Between May 16, 2017 until his return to the hospital on May 21, 2017, MCJ medical staff evaluated and/or treated Thomas Kangas on multiple occasions.

20

21

22

23

24

25

26

On May 21, 2017, an MCJ nurse practitioner determined Thomas Kangas needed to be transferred to Orange County Global Medical Center due to an "altered mental state".  Upon readmission, a CT scan revealed Thomas Kangas suffered from a "subdural hematoma" (a bleed near his brain) and other by-products of his liver cirrhosis. Doctors duly determined that Thomas Kangas was a poor candidate for surgery due to his advanced age and poor liver function. The next morning, Plaintiff arrived at the hospital and requested that all life support efforts be terminated.

27

28

Tellingly, neither the Coroner nor the Orange County District Attorney's

- 4 -

MOTION IN LIMINE NO. 3 TO EXCLUDE ANY REFERENCE TO, MENTION OF, EVIDENCE OF, OR TESTIMONY REGARDING IN-CUSTODY DEATHS AND/OR SUICIDES IN THE SAN DIEGO COUNTY JAILS, MEDIA REGARDING SAME, OR CASES TO WHICH DEFENSE EXPERT DR. ALFRED JOSHUA IS A NAMED PARTY

1  Office (who investigated Thomas Kangas' death), voiced any criticism of Orange
2  County's jail nursing and medical personnel, or the jail's medical treatment of
3  Thomas Kangas. Even so, Plaintiff has now filed this lawsuit against Defendants
4  County of Orange ("County") and individual nursing and medical staff of the MCJ
5  asserting violations of 42 U.S.C. § 1983 and violation of Title II of the Americans
6  with Disabilities and Rehabilitation Act. Needless to say, Defendants vigorously deny
7  Plaintiff's many claims.

8      In support of their defense, Defendants retained then-acting San Diego County
9  Sheriff's Department Chief Medical Officer Dr. Alfred Joshua as an expert witness
10 regarding, among other things, the care provided by Defendants to Decedent during
11 his May 2017 incarceration. (See, Defendants' Designation of Expert Witnesses and
12 Declaration of Tamara M. Heathcote, Exhibit "B,"). Dr. Joshua is eminently qualified
13 to review this case and render expert opinions on Defendants' conduct given his prior
14 medical employment with the San Diego County Jail system. (See, Dr. Alfred
15 Joshua's Curriculum Vitae, Exhibit "B," Heathcote Decl. ¶ 3).

16     Recognizing that Dr. Joshua's credentials and fit for this case present them with
17 challenges, Plaintiff's counsel may resort to attacking the doctor's former place of
18 employment and insinuating that unspecified and unquantified deaths or suicides at
19 unidentified San Diego County jails — some of which supposedly occurred while Dr.
20 Joshua was not working there — are somehow his fault. Defendants also anticipate
21 Plaintiff and her counsel will attempt to question Dr. Joshua at trial regarding pending
22 or prior civil cases to which he is (or was) a named party "in his official capacity" as a
23 jail medical supervisor, all concerning other events with unknown facts that occurred
24 at different times, involving different individuals that are not parties to this action.

25     The Court should have none of this. Testimony regarding a completely separate
26 jail system and alleged deaths or suicides that may have occurred in those locations
27 have no bearing on Dr. Joshua's fitness as an expert witness, or the admissibility or

28

MOTION IN LIMINE NO. 3 TO EXCLUDE ANY REFERENCE TO, MENTION
OF, EVIDENCE OF, OR TESTIMONY REGARDING IN-CUSTODY DEATHS
AND/OR SUICIDES IN THE SAN DIEGO COUNTY JAILS, MEDIA
REGARDING SAME, OR CASES TO WHICH DEFENSE EXPERT DR. ALFRED
JOSHUA IS A NAMED PARTY

1  credibility of his opinions. <u>See</u>, <u>Tieman v. City of Newburgh</u>, 2015 WL 1379652, at

2  *1 (S.D.N.Y. 2015)(finding unproven allegations in lawsuits irrelevant "because 'the

3  number of complaints filed, without more, indicates nothing,' as 'people may file a

4  complaint for many reasons, or for no reason at all' .")(quoting, <u>Strauss v. City of</u>

5  <u>Chicago</u>, 760 F.2d 765, 768-69 (7th Cir. 1985)) (internal alteration marks omitted).

6  Such events are wholly irrelevant, sound in unfounded guilt by association and would

7  otherwise necessitate a series of "mini-trials" that will confuse the jury and waste

8  time.  <u>See</u>, <u>Fed. R. Evid.</u> 401, 403.

9       Allowing Plaintiff to present media reports about these "other deaths," or to even

10  allow questioning regarding such reports, would have a similar unfair effect.  <u>See</u>,

11  <u>Fed. R. Evid.</u> 350, 352.  Plaintiff's media articles have the additional problem of being

12  suffused with inadmissible hearsay; unverified allegations; and claimed "facts" that

13  are not pertinent to any of Plaintiffs' theories of liability.  <u>See</u>, <u>Fed. R. Evid.</u> 602, 801,

14  901. Plaintiffs' further attempt to mislead the jury by referencing other civil cases to

15  which Dr. Joshua may be a party to in his "official" supervisory capacity, and in

16  which he rendered no medical care also smacks of an unfair attempt to introduce

17  inadmissible character evidence.  <u>See</u>, <u>Fed. R. Evid.</u> 404. The issues in this case are

18  whether the Defendants were "deliberately indifferent" toward Decedent's medical

19  issues — not unproven allegations concerning events that happened at other times

20  involving entirely different people and places. <u>See</u>, <u>Tieman v. City of Newburgh</u>, 2015

21  WL 1379652, at *1 (S.D.N.Y. 2015)(finding unproven allegations irrelevant "because

22  'the number of complaints filed, without more, indicates nothing,' as 'people may file a

23  complaint for many reasons, or for no reason at all' .")(quoting, <u>Strauss v. City of</u>

24  <u>Chicago</u>, 760 F.2d 765, 768-69 (7th Cir. 1985)) (internal alteration marks omitted).

25       Defendants' objective in filing this motion is a streamlined, expeditious trial,

26  free from "sideshows" and the taint of reversible error.  This Motion should be

27  granted, and the Court should order *in limine* exclusion of Plaintiff's objectionable

28

MOTION IN LIMINE NO. 3 TO EXCLUDE ANY REFERENCE TO, MENTION
OF, EVIDENCE OF, OR TESTIMONY REGARDING IN-CUSTODY DEATHS
AND/OR SUICIDES IN THE SAN DIEGO COUNTY JAILS, MEDIA
REGARDING SAME, OR CASES TO WHICH DEFENSE EXPERT DR. ALFRED
JOSHUA IS A NAMED PARTY

1   evidence consistent with Defendants' notice of motion.

2  **II.   EVIDENCE CONCERNING OTHER DEATHS OR SUICIDES AT SAN**

3     **DIEGO COUNTY JAILS AND MEDIA COVERAGE REGARDING**

4     **SAME IS IRRELEVANT, PREJUDICIAL, WITHOUT FOUNDATION,**

5     **AND INADMISSIBLE HEARSAY**

6     <u>Fed. R. Evid.</u> 402 states:

7          Evidence is relevant if:

8           (a) it has any tendency to make a fact more or less probable than it

9     would be without the evidence; and

10         (b) the fact is of consequence in determining the action.

11  "The court may exclude relevant evidence if its probative value is substantially

12  outweighed by a danger of one or more of the following: unfair prejudice, confusing

13  the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

14  cumulative evidence." <u>Fed. R. Evid.</u> 403.

15     Case law also shows that evidence may be excluded where it may confuse the

16  issues or mislead the jury. <u>Hamling v. U.S.</u>, 418 U.S. 87, 124–27 (1974) (trial court

17  did not abuse its discretion by excluding evidence on the basis that it was largely

18  irrelevant, and to the extent that it was relevant, it was unfairly confusing to the jury

19  and cumulative); <u>Harrison v. Sears, Roebuck and Co.</u>, 981 F.2d 25, 31–32, (1st Cir.

20  1992) (trial judge had discretion to exclude otherwise admissible evidence under Rule

21  403, based upon a concern that it might improperly confuse and prejudice the jury); <u>In</u>

22  <u>re Paoli R.R. Yard PCB Litigation</u>, 35 F.3d 717, 781–84, (3d Cir. 1994) (trial court

23  was within its discretion when it excluded minimally relevant evidence, on the basis

24  that it was prejudicial, highly inflammatory, confusing, and a waste of time).

25     The defense recognizes that the qualifications and credibility of a retained

26  expert witness can be a fertile ground for cross-examination.  The supposed "other

27  deaths" and suicides Plaintiff may wish to raise with Dr. Joshua in front of the jury,

28

MOTION IN LIMINE NO. 3 TO EXCLUDE ANY REFERENCE TO, MENTION
OF, EVIDENCE OF, OR TESTIMONY REGARDING IN-CUSTODY DEATHS
AND/OR SUICIDES IN THE SAN DIEGO COUNTY JAILS, MEDIA
REGARDING SAME, OR CASES TO WHICH DEFENSE EXPERT DR. ALFRED
JOSHUA IS A NAMED PARTY

1   however, do not touch on either of these grounds, and therefore have no probative

2   value.  There has not (and never has) been any foundation laid that these "other

3   deaths" and suicides in any way resemble the facts of this case; that Dr. Joshua was

4   somehow personally involved with these "other deaths"; or that Dr. Joshua rendered

5   some sort of medical care related to those events.  Indeed, that San Diego County Jail

6   inmates may have passed away while in custody has no bearing on the role Dr. Joshua

7   will play in this case.  Allowing inquiry into "other deaths" during a portion of trial

8   that should be focused on Dr. Joshua's opinions as to what happened here (and the

9   bases for them) would only necessitate a series of "mini-trials" on events that simply

10   do not matter.  There is no utility in such a waste of juror time. The only result would

11   be to distract from the actual issues to be resolved at trial. See, Fed. R. Evid. 403.

12       Plaintiff's anticipated attempts to validate their approach with negative media

13   portrayals of the San Diego County jail system further complicates matters, as such

14   media is similarly irrelevant.  Plaintiff's current case is against the County of Orange

15   and four County of Orange health care employees for what Plaintiff alleges occurred

16   during Decedent's 6-day incarceration in an Orange County Jail.  Any accounts

17   regarding the San Diego County Sheriff's Department are irrelevant to Plaintiffs'

18   claims and do not go to the weight or admissibility of Dr. Joshua's testimony — the

19   San Diego County Sheriff's Department, its policies, practices, and/or customs, as

20   interpreted by arm-chair journalists, are not on trial here.  What was reported by the

21   media related to other acts on other dates at other times and under different

22   circumstances has no tendency to prove or disprove the key medical facts in this case.

23   That evidence can be provided by the testimony of witnesses with personal knowledge

24   to contribute, not through the off-topic, hearsay opinions of non-witness reporters.

25

26   / / /

27

28

MOTION IN LIMINE NO. 3 TO EXCLUDE ANY REFERENCE TO, MENTION
OF, EVIDENCE OF, OR TESTIMONY REGARDING IN-CUSTODY DEATHS
AND/OR SUICIDES IN THE SAN DIEGO COUNTY JAILS, MEDIA
REGARDING SAME, OR CASES TO WHICH DEFENSE EXPERT DR. ALFRED
JOSHUA IS A NAMED PARTY

1
2
3

### III.   EVIDENCE OF OTHER CASES WHERE DR. JOSHUA IS NAMED AS A PARTY IN HIS OFFICIAL CAPACITY SHOULD BE EXCLUDED AS IRRELEVANT AND IMPROPER CHARACTER EVIDENCE

4
5
6
7
8
9
10
11
12
13
14
15
16
17

It should come as no surprise that correctional supervisors often draw the ire of disgruntled inmates and their families. Lawsuits often-times follow. But an inmate's choice to file a lawsuit and name a far-removed supervisor as a defendant, standing alone, says nothing about the actual medical expertise of the supervisor. And this is especially so where, as here, there is no evidence that those lawsuits have been tested by the adversarial process, or any evidence that Dr. Joshua was adjudicated to have done anything wrong in any instance.  Evidence regarding these lawsuits is therefore irrelevant to Dr. Joshua's role in this case, and should be excluded as unfairly prejudicial. See, See, Tieman v. City of Newburgh, 2015 WL 1379652, at *1 (S.D.N.Y. 2015)(finding unproven allegations irrelevant "because 'the number of complaints filed, without more, indicates nothing,' as 'people may file a complaint for many reasons, or for no reason at all' .")(quoting, Strauss v. City of Chicago, 760 F.2d 765, 768-69 (7th Cir. 1985)) (internal alteration marks omitted); Fed. R. Evid. 401 and 403.

18
19
20
21
22
23
24

The only effect of allowing such evidence would be to unfairly smear Dr. Joshua with impermissible character evidence; the implication being that because Dr. Joshua has been sued for alleged "other bad acts," he is unfit to render opinions in this case.  The corresponding danger is that if the jury hears and credits these alleged other cases naming Dr. Joshua, they may take it out on the Defendants. Fed. R. Evid. 404 rightly protects litigants from the inflammatory response such an approach is designed to generate.

25
26
27

Specifically, Fed. R. Evid. 404 provides, in pertinent part, that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."  The rationale for

28

- 9 -

1    this rule is set forth in the comments accompanying the statute's enactment:

2    "Character evidence is of slight probative value and may be very prejudicial. It tends

3    to distract the trier of fact from the main question of what actually happened on the

4    particular occasion. It subtly permits the trier of fact to reward the good man to punish

5    the bad man because of their respective characters despite what the evidence in the

6    case shows actually happened." (See, Comment to Fed. R. Evid. 404).

7          Here, Plaintiffs' suit concerns a handful of nursing and medical encounters

8    Decedent had with Defendants in May 2017.  To permit Plaintiff to flood the trial with

9    a litany of stale, unproven, alleged "other bad acts" involving an expert witness in

10   lawsuits where he rendered no medical treatment is barred by Fed. R. Evid. 404.

11   Accordingly, on this point, Defendants' motion should be granted and any evidence of

12   Dr. Joshua being named as party "in his official capacity" in other lawsuits should be

13   excluded in *limine*.

14         Even if Plaintiff's putative "other bad acts" approach was somehow allowable

15   — ***and it is not*** — the evidence would still be subject to exclusion under Fed. R. Evid.

16   401, 403.  Dr. Joshua should not be forced to unfairly litigate the merits of separate

17   cases (where he is otherwise afforded protections of due process) while on the witness

18   stand in this case.  Nor should this Court permit trial time for such discussions, which

19   will only burden the jury with collateral matters irrelevant to the issues presented here.

20   See, Fed. R. Evid. 403.

21   **IV.    MEET AND CONFER EFFORTS**

22         On March 29, 2021, counsel for Defendants caused a meet and confer letter to

23   be sent to counsel for Plaintiff pursuant to Local Rule 7-3.  See, Meet and Confer

24   Letter, Ex. A. No response was received to this meet and confer letter.  See, ¶ 2,

25   Declaration of Tamara M. Heathcote.

26   **V.    CONCLUSION**

27         For the foregoing reasons, Defendants respectfully request that this Court enter

28
MOTION IN LIMINE NO. 3 TO EXCLUDE ANY REFERENCE TO, MENTION
OF, EVIDENCE OF, OR TESTIMONY REGARDING IN-CUSTODY DEATHS
AND/OR SUICIDES IN THE SAN DIEGO COUNTY JAILS, MEDIA
REGARDING SAME, OR CASES TO WHICH DEFENSE EXPERT DR. ALFRED
JOSHUA IS A NAMED PARTY

1    a pre-trial order excluding any reference to, mention of, evidence, or testimony

2    regarding in-custody deaths or suicides at the San Diego County jails, media regarding

3    same, and cases to which defense expert Dr. Alfred Joshua is named as a party.

4    DATED:  April 5, 2021                    Respectfully submitted,

5                                             **LYNBERG & WATKINS**

6                                             */s/ Tamara M. Heathcote*
                                             **S. FRANK HARRELL**
7                                             **TAMARA M. HEATHCOTE**
                                             Attorneys for Defendants
8                                             COUNTY OF ORANGE, JAGDISH
                                             CHOPRA, ANH TRAN, LENA CHUNG,
9                                             and MICHAEL LAM

MOTION IN LIMINE NO. 3 TO EXCLUDE ANY REFERENCE TO, MENTION
OF, EVIDENCE OF, OR TESTIMONY REGARDING IN-CUSTODY DEATHS
AND/OR SUICIDES IN THE SAN DIEGO COUNTY JAILS, MEDIA
REGARDING SAME, OR CASES TO WHICH DEFENSE EXPERT DR. ALFRED
JOSHUA IS A NAMED PARTY

## DECLARATION OF TAMARA M. HEATHCOTE

I, Tamara M. Heathcote, do declare and state as follows:

1.      I am a partner with the law firm of Lynberg & Watkins, a Professional Corporation, attorneys of record for Defendants COUNTY OF ORANGE, JAGDISH CHOPRA, ANH TRAN, LENA CHUNG, and MICHAEL LAM.  I have personal knowledge of the following facts, and if called as a witness, I could and would testify competently thereto.

2.      On March 29, 2021 I prepared, and emailed to counsel for Plaintiff, a meet and confer letter, pursuant to Local Rule 7-3 regarding the potential motions in limine we planned to file on behalf of Defendants.  A true and correct of the letter with the email is attached hereto as Exhibit A.  As of the filing of this motion, no response has been received to the letter.

3.      Attached hereto as Exhibit B is a true and correct copy of Defendants' Expert Witness Disclosure.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.  Executed on April 5, 2021 in the City of Orange, County of Orange, State of California.

_____

**TAMARA M. HEATHCOTE**
**Declarant**

MOTION IN LIMINE NO. 3 TO EXCLUDE ANY REFERENCE TO, MENTION OF, EVIDENCE OF, OR TESTIMONY REGARDING IN-CUSTODY DEATHS AND/OR SUICIDES IN THE SAN DIEGO COUNTY JAILS, MEDIA REGARDING SAME, OR CASES TO WHICH DEFENSE EXPERT DR. ALFRED JOSHUA IS A NAMED PARTY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4814-8737-7636, v. 1

MOTION IN LIMINE NO. 3 TO EXCLUDE ANY REFERENCE TO, MENTION OF, EVIDENCE OF, OR TESTIMONY REGARDING IN-CUSTODY DEATHS AND/OR SUICIDES IN THE SAN DIEGO COUNTY JAILS, MEDIA REGARDING SAME, OR CASES TO WHICH DEFENSE EXPERT DR. ALFRED JOSHUA IS A NAMED PARTY

EXHIBIT A

# LYNBERG & WATKINS

WWW.LYNBERG.COM

**LOS ANGELES**

1150 S. Olive Street
Eighteenth Floor
Los Angeles, CA 90015
Tel  213-624-8700
Fax  213-892-2763

**ORANGE COUNTY**

1100 Town & Country Road
Suite #1450
Orange, CA 92868
Tel  714-937-1010
Fax  714 937-1003

**SAN DIEGO**

185 West F Street
4th Floor
San Diego, CA 92101
Tel  619-814-2169
Fax  619-356-4968

REPLY TO: **ORANGE COUNTY**

*March 29, 2021*

***VIA EMAIL***

Cameron Sehat, Esq.
THE SEHAT LAW FIRM, PLC.
19800 MacArthur Boulevard, Suite 1000
Irvine, CA  92612

Re:    ***Kangas, et al. v. County of Orange, et al.***
         USDC Case No.:        8:18-CV-02063-JVS-DFM
         Our File No.:           1793-0259

Dear Mr. Sehat:

This letter will serve as Defendants meet and confer correspondence, pursuant to <u>Local Rule</u> 7-3, prior to Defendants filing motions *in limine*.  Defendants intend to file the following motions in limine if we cannot reach a stipulation in regards to the subject matter of the motion.

1. Defendants' Motion In Limine No. 1 To Exclude Evidence, Argument, Or Expert Opinion Of Unrecoverable "Wrongful Death" Damages;

2. Defendants' Motion In Limine No. 2 To Exclude Evidence Of Insurance Coverage And Potential Indemnification Of Defendants Against Judgment For Damages;

3. Defendants' Motion In Limine No. 3 To Exclude Evidence, Argument, Or Expert Opinion That Defendants Violated Internal County Policy, Title 15 Regulations, And/Or NCCHC Standards;

4. Defendants' Motion In Limine No. 4 To Exclude Any Reference To, Mention Of, Evidence Of, Or Testimony Regarding In-Custody Deaths And/Or Suicides In The San Diego County Jails, Media Regarding Same, Or Cases To Which Defense Expert Dr. Alfred Joshua Is A Named Party;

*Re: **Kangas, et al. v. County of Orange, et al.***
March 29, 2021

5. Defendants' Motion In Limine No. 5 To Exclude Photographs And Video Recording Of Decedent In The Hospital And Photographs From Decedent's Autopsy;

6. Defendants' Motion In Limine No. 6 To Preclude Plaintiffs' "Reptile Theory" Or "Golden Rule" Arguments;

7. Defendants' Motion In Limine No. 7 To Exclude Reports Regarding Orange County Jails, Or In The Alternative, A Request For A Hearing Pursuant To Evid. Code § 402; and

8. Defendants' Motion in Limine No. 8 to Preclude Testimony or Evidence regarding Speculative Opinions as to what is seen in the Shadows of the Jail Videos.

Please contact me if there is something we can discuss and potentially stipulate to.

*Very truly yours*,

**TAMARA M. HEATHCOTE**

4827-3738-3596, v. 1

**2**

EXHIBIT B

NORMAN J. WATKINS (SBN 87327)
nwatkins@lynberg.com
S. FRANK HARRELL (SBN 133437)
sharrell@lynberg.com
TAMARA M. HEATHCOTE (SBN 193312)
theathcote@lynberg.com
**LYNBERG & WATKINS**
A Professional Corporation
1100 Town & Country Road, Suite 1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

Attorneys for Defendants, COUNTY OF ORANGE, JAGDISH CHOPRA, ANH TRAN, LENA CHUNG, and MICHAEL LAM

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNDA AYLEEN KANGAS, Individually and as Personal Representative of the Estate of ORVILLE THOMAS KANGAS, Deceased, | Case No. 8:18-CV-02063-MCS-DFMx |
| | *Assigned for All Purposes to:* *Hon. Mark C. Scarsi* |
| Plaintiff, | **DEFENDANTS' EXPERT DISCLOSURES PURSUANT TO FED. R. CIV. PROC. 26(a)(2)(A)** |
| v. | |
| COUNTY OF ORANGE, A Governmental Entity; JAGDISH CHOPRA, Individually; and DOES 1 through 10, Inclusive | Complaint Filed:   11/19/2018 FAC Filed:          12/24/2018 Trial:               05/04/2021 |
| Defendant. | |

1   **TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF**

2   **RECORD HEREIN:**

3   **PLEASE TAKE NOTICE** that Defendants hereby designate their expert

4   witnesses pursuant to <u>Federal Rules of Civil Procedure</u>, Rule 26(a)(2), as follows:

5       1.    Dr. Alfred Joshua, M.D., M.B.A., F.A.A.E.M

6              P.O. Box 5000 PMB 525

7              Rancho Santa Fe, CA 92067

8              (619) 208-7053

9       The report, curriculum vitae, case list and fee schedule of Dr. Joshua are

10   attached hereto as Exhibit "A."

11       Dr. Joshua is a medical doctor, Board Certified Emergency Room Physician,

12   and the former Medical Officer for the San Diego County Sheriff's Department.  At

13   the time of trial, Dr. Joshua will testify as to Decedent's medical history, treatment,

14   and care, including emergency care, and the standard of care practiced by Defendants

15   and the medical staff, and such other testimony as may be relevant, which may depend

16   on the testimony provided by Plaintiff and/or their experts.

17       Defendants expressly reserve the right to call as a witness any and all experts

18   designated by any other party.

19       Defendants expressly reserve the right to call as their own expert witnesses any

20   additional expert witnesses needed for the purposes of rebuttal or impeachment at the

21   time of trial.

22       Defendants reserve the right to call any other expert witness or percipient

23   witness for the purpose of eliciting any opinions held by such witnesses and to

24   supplement this disclosure to the extent that any party designates expert witnesses in

25   an area not currently anticipated.

26       Defendants hereby designate the following non-retained expert witnesses and/or

27   employees pursuant to <u>Federal Rules of Civil Procedure</u>, Rule 26(a)(2)(A):

28       1.    Dr. Scott A. Luzi, assessment and medical condition of decedent Orville

Kangas;

2.   Dr. Thomas Le, Orange County Health Care Agency, treatment/assessment and medical/mental condition of decedent Orville Kangas;

3.   Dr. Anh Tran, Orange County Health Care Agency, treatment/assessment and medical/mental condition of decedent Orville Kangas;

4.   Dr. Michael Lam, Orange County Health Care Agency, treatment/assessment and medical/mental condition of decedent Orville Kangas;

5.   Dr. Michael Lam, Orange County Health Care Agency, treatment/assessment and medical/mental condition of decedent Orville Kangas;

6.   Nurse Jagdish Chopra, Orange County Health Care Agency, treatment/assessment and medical/mental condition of decedent Orville Kangas;

7.   Nurse Lena Chung, Orange County Health Care Agency, treatment/assessment and medical/mental condition of decedent Orville Kangas;

8.   Noel Ursula, NP, Orange County Health Care Agency, treatment/assessment and medical/mental condition of decedent Orville Kangas;

9.   Nurse Raychana Sinclair, Orange County Health Care Agency, treatment/assessment and medical/mental condition of decedent Orville Kangas;

10.  Nurse Patricia Klein, Orange County Health Care Agency, treatment/assessment and medical/mental condition of decedent Orville Kangas;

11.  Nurse Mario Manacmul, Orange County Health Care Agency,

1   treatment/assessment and medical/mental condition of decedent Orville

2   Kangas;

3   12.   Nurse Vanessa Monroy, Orange County Health Care Agency,

4   treatment/assessment and medical/mental condition of decedent Orville

5   Kangas;

6   13.   Ashley Szmania, RN, Orange County Global Medical Center,

7   treatment/assessment and medical/mental condition of decedent Orville

8   Kangas;

9   14.   Dr. Nishu Karki, Orange County Global Medical Center,

10   treatment/assessment and medical/mental condition of decedent Orville

11   Kangas;

12   15.   Nurse Abigail Constantino, Orange County Health Care Agency,

13   treatment/assessment and medical/mental condition of decedent Orville

14   Kangas;

15   16.   Nurse Ralph Guangco, Orange County Health Care Agency,

16   treatment/assessment and medical/mental condition of decedent Orville

17   Kangas;

18   17.   James Castro, Orange County Fire Authority, treatment/assessment and

19   medical/mental condition of decedent Orville Kangas;

20   18.   Dr. Thomas D. Nguyen, DO, Kaiser Permanente Garden Grove,

21   treatment/assessment and medical/mental condition of decedent Orville

22   Kangas;

23   19.   Dr. Lawrence L. Vue, DO, Kaiser Permanente Garden Grove,

24   treatment/assessment and medical/mental condition of decedent Orville

25   Kangas;

26   20.   Dr. Gary J. Jacobson, DO, Kaiser Permanente Garden Grove,

27   treatment/assessment and medical/mental condition of decedent Orville

28   Kangas;

**DEFENDANTS' EXPERT DISCLOSURES PURSUANT TO FED. R. CIV. PROC. 26(a)(2)(A)**

21.  Dr. Gerald U. Lim, MD, Kaiser Permanente Garden Grove, treatment/assessment and medical/mental condition of decedent Orville Kangas;

22.  Dr. Phillip D. Endicott, DO, Kaiser Permanente Yorba Linda, treatment/assessment and medical/mental condition of decedent Orville Kangas;

23.  Raymond A. Warner, Kaiser Permanente Santa Ana, treatment/assessment and medical/mental condition of decedent Orville Kangas;

24.  Sandra M. Lacaud, Kaiser Permanente Santa Ana, treatment/assessment and medical/mental condition of decedent Orville Kangas;

25.  Leslie A. Wennerstrom, Kaiser Permanente Santa Ana, treatment/assessment and medical/mental condition of decedent Orville Kangas; and

26.  Mariaelena Esquivias, RN, Kaiser Permanente, treatment/assessment and medical/mental condition of decedent Orville Kangas.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**DEFENDANTS' EXPERT DISCLOSURES PURSUANT TO FED. R. CIV. PROC. 26(a)(2)(A)**

1      Defendants may call upon the above designated non-retained expert

2  witnesses/employees at trial to testify as to matters within the scope of their personal

3  knowledge and/or employment.  The designated non-retained experts can be expected

4  to render opinions with respect to the scope of their employment at the Orange County

5  Fire Authority, Orange County Health Care Agency, Kaiser Permanente, including

6  their policies, procedures and training, as well as other related matters of personal

7  knowledge as percipient witnesses and/or employees.

8  DATED:  December 29, 2020        **LYNBERG & WATKINS**

9                        A Professional Corporation

10

11             By:  */s/ Tamara M. Heathcote*

12                    **S. FRANK HARRELL**
                              **TAMARA M. HEATHCOTE**
                              Attorneys for Defendants

13

14

15

16

17  4844-9207-3093, v. 1

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' EXPERT DISCLOSURES PURSUANT TO FED. R. CIV. PROC. 26(a)(2)(A)**

# EXHIBIT A

# ALFRED A. JOSHUA MD, MBA, CCHP-P, FAAEM

AlfredJoshuaMD@gmail.com ♦ PO Box 5000 PMB 525 Rancho Santa Fe, CA 92067 ♦

## OBJECTIVES

Creating a correctional healthcare system that redesigns medical and mental health services to continuously bring quality, innovation, access, and efficiency.

## EDUCATION

UC Irvine Healthcare Executive Masters of Business Administration (MBA)
Paul Merage School of Business
6/2013

1. Excellence Award Top Grade Point Average for HCEMBA Class of 2013
2. Dean's Scholar for Academic Excellence (June 2013)-Awarded to top 12% of UC Irvine MBA graduates
3. Beta Gamma Sigma International Honor Society (June 2013)- Awarded to top 20% of MBA graduates

SUNY Syracuse
5/2007 Doctor of Medicine (MD)

Alpha Omega Alpha(AOA)- (September 2006) elected into Medical School Honor society of top 16% of medical school graduates elected based on leadership, character, community service, and professionalism

CUNY: Sophie Davis School of Biomedical Education
6/2005 Bachelor of Science (BS)
Awarded Cum Laude

## ADMINISTRATIVE EXPERIENCE

Paradise Valley and Alvarado Medical Center, San Diego County
*Regional Chief Medical Officer* 2/5/19-Present
Serving as the Regional Chief Medical Officer over both Paradise Valley Hospital and Alvarado Medical Center to provide oversight of clinical programs and strategic integrations.

Sheriff's Department, San Diego County ♦ 5530 Overland Ave San Diego, CA
*Chief Medical Officer* 11/15/2013 – 6/29/18
Serving as the Chief Medical Officer for the San Diego Sheriff's Department to manage a comprehensive health care program that is designed to serve 91,000+ inmates who are annually booked with an average daily population of 5,900 inmates housed at seven detention facilities throughout the San Diego region covering 4,562 square miles.  Dr. Joshua oversees a staff of 307 employees, 19 contracts, and a budget of $75 million annually.  Comprehensive medical services

Alfred A. Joshua MD, MBA, FAAEM

managed include on site medical, telehealth services, dental, mental health, dialysis, public health as well as inpatient hospitalizations, outpatient specialty referrals, optometry, radiology and lab services with over 100 contracted medical providers. In addition, I am involved with medical and mental health contract oversight, financial forecasting, media relations, and legal consultation for County Counsel.

I have served as a subject matter expert for the Board of State and Community Corrections (BSCC) on medical and mental health best practices and revision of Title 15 regulations.  I serve as consultant and expert witness on medical malpractice, negligence and deliberate indifference claims cases in California and other states related to primarily to corrections.

### Highlights (2013-2018)

1. Creation of Managed Care Department for central utilization review and establish new value based hospital contracting which saved the Sheriff's department $57 Million over 4 fiscal years in inpatient and outpatient medical care.
2. Standardizing medical and mental healthcare across seven facilities through policies & procedures, staffing recruitment and system redesign for how services are accessed and quality control measures to ensure compliance.
3. Revised Sheriff's department medical and psychiatric formulary to be efficacious, cost effective, and least side effect profile for patients and streamlined operations with outsourcing of medication dispensing.
4. Redesigned Mental Health care with a new suicide prevention protocol (Inmate Safety Program) that is designed to reduce suicide deaths, attempts, and safety cell placements.
5. Creating a TeleHealth infrastructure and operationalizing outpatient specialty referrals in all jails to utilize this medium to improve access to care.
6. Reduction of opiate medication usage in San Diego Jails by 98% in 4 years and implemented a program for counseling and accountability for patients.

### AWARDS

1. **Certificate of Commendation** (April 28, 2015): in recognition of leadership in changing medical care in the jails since the implementation of AB 109.  The significant and positive shift in managing inmate/patient healthcare as a result of dedication, professionalism and innovative ideas.

Alfred A. Joshua MD, MBA, FAAEM

2.  **CAO Excellence Award for Public Safety Group (2015):** in recognition of an executive in Public Safety Group who demonstrated excellence in leadership for the county.

**Volunteers of America, San Diego** ♦ 3530 Camino Del Rio N #300, San Diego, CA
*Medical Consultant* 01/2013 – 12/2017

Served as the Medical Director to develop clinical infrastructure with certain VOA health programs located in San Diego. Responsibilities include: 1. System Assessment and preparation to position agency for opportunities associated with Health Care Reform 2. Quality Assurance- Full review of operating protocols to align with Health Care Reform 3. Medical Professional Liaison  4. Research and develop opportunities to enhance the wellness of clients in treatment facilities. 5. Developed and conducts a weekly onsite clinic to provide medical services to patients at the facility.

**Tri-City Medical Center** ♦ 4002 Vista Way Oceanside, CA
*Senior Medical Officer, Healthcare Reform* 05/2013 – 11/14/2013

Serving as Senior Medical Officer to carry out strategic initiatives of the medical center including building a primary care infrastructure, specialist referral base, and executing on the joint powers agreement with Fallbrook Hospital. To counsel the medical center on issues related to Affordable Care Act and Healthcare Reform.

**UC San Diego** ♦ 200 West Arbor Drive San Diego, CA
*Health System Administrative Fellow* 06/2011 – 05/2013

The first physician administrative fellow to work with the health system's executive management team along with direct supervision from CEO, President of the Medical Group, and Chief Medical Officer to learn to learn the daily operations and strategic initiatives of an academic medical center. Projects/Initiatives to further the mission and vision of the health system include:  1)Project Manager: Lean Six Sigma(ED/Lab)   2)Advisor: ED UHC Collaborative 3)Pharmacy Patient Counseling initiative 4)Jacobs Medical Center Planning 5) Qualcomm RFP 6)ED/Psych Resource Utilization Program 7)Urgent Care Business Plan

## CLINICAL EXPERIENCE
**Veteran Affairs** ♦ La Jolla, CA
*Emergency Department Physician* 02/2015 – Present

Working as a Board Certified physician at a community district hospital to provide emergency room care to veterans.

Alfred A. Joshua MD, MBA, FAAEM

Tri-City Hospital ♦ Vista, CA
**Emergency Department Physician** 09/2011 – 07/2014

Working as a Board Certified physician at a community district hospital to provide emergency room care to patients.

UC San Diego ♦ 200 West Arbor Drive San Diego, CA
**Assistant Clinical Professor, Non Salaried** 07/2011 – 11/2013

Working as a Board Certified emergency department physician at a tertiary care academic medical center at the Hillcrest and Thornton hospital to provide care for patients. Worked at county jails (George Bailey, Central Jail, Las Colinas, South Bay Jail) from 2010-2012 to provide physician sick call service at each location.

UCSD Emergency Medicine Residency ♦ 200 West Arbor Drive San Diego, CA
**Resident Physician, Flight Physician** 07/2008 – 06/2011

Working as a resident physician at the Hillcrest and Thornton Emergency departments to provide care for patients. Flying in medical transport helicopters to respond to scene calls to transport patients and provide critical on scene medical care.

- Residency Award: 2010 ACEP/EMRA NATIONAL RESUSCITATION SIMULATION CHAMPIONS (SIM WARS)

Scripps Mercy Hospital ♦ San Diego, CA
**Transitional Year Intern** 07/2007 – 06/2008

Working as an intern physician at Scripps Mercy.

## BOARD PARTICIPATION

1. **San Diego Health Connect**- July 2015-June 2018. Serve as a Board of Directors as the representative for the Sheriff's Department and Public Safety Group for the San Diego Health Connect, a nonprofit Health Information Exchange to share medical information across most of the San Diego Hospitals/Health Systems and County of San Diego's Health and Human Services.

2. **Council of Mentally Ill Offenders(COMIO)**- Appointed July 2015-December 2018. Appointed by the Speaker of the House, Toni Atkins to serve as a Board of Directors to a Board that oversees treatment of mentally ill inmates in custody.

Alfred A. Joshua MD, MBA, FAAEM

# PUBLICATIONS
### Book Chapters:

1. Joshua A:  Blunt neck trauma.  In: <u>Rosen and Barkin's 5-Minute Emergency Medicine Consult</u> (fourth edition).  Schaider J, Hayden SR, Wolfe R, Barkin RM, Barkin A, Shayne P, Rosen P (Eds.); Philadelphia: Lippincott Williams & Wilkins, 2010.
2. Joshua A:  Subarachnoid hemorrhage.  In: <u>Rosen and Barkin's 5-Minute Emergency Medicine Consult</u> (fourth edition).  Schaider J, Hayden SR, Wolfe R, Barkin RM, Barkin A, Shayne P, Rosen P (Eds.); Philadelphia: Lippincott Williams & Wilkins, 2010
3. Joshua A:  Abdominal Imaging, Trauma.  In: <u>Rosen and Barkin's 5-Minute Emergency Medicine Consult</u> (fourth edition).  Schaider J, Hayden SR, Wolfe R, Barkin RM, Barkin A, Shayne P, Rosen P (Eds.); Philadelphia: Lippincott Williams & Wilkins, 2013


### Grants/Consulting:
1. Easy IO Educational Grant: $8500
2. Cepheid: ED Advisory Panel: New Products $2500 (Honorarium)


### Abstracts Presented:
1. Joshua A, Chan T., Castillo E.; A Conceptual Model for Emergency Department Throughput: ED Bed Time (BT) and its effects on Waiting Room Times and Left Without Being Seen Patients Regional SAEM Conference
3/2010 Sonoma, CA
2. Joshua A, Chan T., Castillo E.; A Tool for Emergency Department Throughput: Using Maximum ED Bed Time to Reduce Wait Times and the Number of Left Without Being Seen Patients ACEP National Conference 9/2010 Las Vegas, CA
3. Joshua A, Sloane C., Chan T., Vilke G. Interosseous line vs. central line in adult hypotensive patients Regional SAEM Conference 2/2011 Keystone, CO
4. Joshua A. et. al An Innovative Solution to Reduce ED Recidivism among Substance Abuse and Psychiatric Patients. ACEP 10/2013, Seattle, WA


### Publications:
1. Joshua A, Chan T., Castillo E.; A Tool for Emergency Department Throughput: Using Maximum ED Bed Time to Reduce Wait Times and the Number of Left Without Being Seen Patients Annals of Emergency Medicine 9/2010 (Abstract)
2. Nordt SP, Minns A, Carstairs S, Kreshak A, Campbell C, Tomaszewski C, Hayden SH, Clark RF, Joshua A, Ly BT:  Mass sociogenic illness initially reported as carbon monoxide poisoning.  J Emerg Med 2012;42(2):159-161.
3. Campbell, Joshua, Medak, et al. Is ultrasound-guided subclavian vein cannulation more successful than traditional methods? Academic Emergency Medicine. 2011; Blackwell Publishing Ltd. Vol 18(5) S211. (abstract)

Alfred A. Joshua MD, MBA, FAAEM

4. Karla DW, Bovet J, Haynes B, Joshua A, et al. Training law enforcement to respond to opioid overdose with naloxone: Impact on knowledge, attitudes, and interactions with community members. *Drug and Alcohol Dependence* 2016

5. Degner N, Joshua A, et al. Comparison of Digital Chest Radiographyto Purified Protein Derivative for Screening of Tuberculosis in Newly Admitted Inmates. Journal of Correctional Healthcare 2016 Vol. 22(4) 322-330

**Press Releases/Media(Television/Radio/Newspaper):**

1. "How Drug Abuse Affects ERs, and What Emergency Physicians Are Doing About It"- Reuters
   http://www.prnewswire.com/news-releases/how-drug-abuse-affects-ers-and-what-emergency-physicians-are-doing-about-it-227222331.html

2. Flu Shots- Tri-City Medical Center- KUSI (Television)- June 2013

3. Smoking Alcohol- Tri-City Medical Center- KUSI (Television)-July 2013
   https://www.youtube.com/watch?v=HeUeKIkhQsE

4. "Working on Jail Remedies"- Sheriff's Department
   http://www.countynewscenter.com/news/working-jail-remedies

5. Changing Medical Model for San Diego County Jails- Sheriff's Department(Television)
   http://www.kpbs.org/news/2014/feb/18/sd-county-changing-medical-model-jails-meet-needs-/

6. Changing Medical Model for San Diego County Jails (Radio)

   http://www.kpbs.org/audioclips/21367/#transcript

7. Overdose Antidote Interviews & Simulation Demonstration (YouTube Video)

8. An Interview with Sheriff's Chief Medical Officer- Citybeat July 2014
   http://www.sdcitybeat.com/sandiego/article-13223-an-interview-with-the-sheriffs-chief-medical-officer.html

9. Citizens' Panel Investigates Policy in Jail Death – KUSI (Television) – September 2014

10. Lending a Hand in San Diego(Volunteers of America), Bank of America 2014

11. http://about.bankofamerica.com/en-us/partnering-locally/lending-a-hand-in-san-diego.html#fbid=REGjpMKLhvF

12. Silver Star Article- February 2015- Redesigning Medical and Mental Health Care in Jails

13. Ethics Awareness Newsletter (Sheriff's Department) March 16, 2015

14. Cutting Crime Among the Mentally Ill (CNN Money) April 2015
    http://money.cnn.com/2015/04/24/news/economy/mentally-ill-crime/index.html

Alfred A. Joshua MD, MBA, FAAEM

15. San Diego County jail protocols aim to cut suicide rate (LA Times) December 2015
    http://www.latimes.com/local/california/la-me-sd-suicide-watch-20151221-story.html

16. New Jail Menu Focuses on Nutrition (CW 6) January 2015
    http://www.cw6sandiego.com/new-jail-menu-focuses-on-nutrition/

17. Sheriff's Department Makes Strides to improve diets of inmates (East County Magazine)
    http://www.eastcountymagazine.org/sheriff%E2%80%99s-department-making-strides-improve-diets-inmates

18. As need skyrockets, Sacramento jail to expand aid to mentally ill March 2017
    http://www.sacbee.com/news/local/crime/article140363113.html

19. San Diego County jails make changes to treat mentally ill inmates, curb suicides April 2017
    http://www.sandiegouniontribune.com/news/public-safety/

20. Possible Hepatitis Exposure at Detention Facilities March 2018
    https://www.eastcountymagazine.org/possible-hepatitis-exposure-detention-facilities-santee-and-vista

21. Weaning the County Jail Population off Opioids April 2018
    http://www.sandiegouniontribune.com/news/public-safety/sd-me-opioids-jails-20180423-story.html

22. San Diego County jails reduce prescriptions for opioids  May 2018
    http://www.kusi.com/san-diego-county-jails-reduce-prescriptions-opioids/


**Presentations/Public Speaking Engagements:**

1. Public Safety Group CAO Quarterly Presentation Panel – Mental Health in Regards to Public Safety Realignment – February 2014
2. Neighborhood House Association – Mental Health Presentation – March 2014
3. Citizens Law Enforcement Review Board Presentation – Suicide Prevention Strategies – June 2014
4. Open Minds Presentation – Mental Health in San Diego County Jails – August 2014
5. California State Sheriffs' Association – Affordable Care Act – August 2014
6. National Commission on Correctional Health Association – Viewing Correctional Healthcare as a Payor – October 2014
7. Honorary Sheriff Deputy Association- Redesigning Medical and Mental Healthcare in San Diego County Jails: A life and death challenge 2015
8. Police Chief's Presentation: Redesigning Medical and Mental Healthcare: 5 Year Plan
9. San Diego Mental Health Coalition: Mental Health care in San Diego Jails – April 2015

10. Citizens Law Enforcement Review Board Presentation – Suicide Prevention Strategies – July 2015
11. Behavioral Health Advisory Board- Nov 2015
12. San Diego Law Society- Redesigning Mental Health Care in Jails Nov 2015
13. National Commission on Correctional Health Association – Inmate Safety Program – April 2016
14. Grand Jury Presentation- Mental Health San Diego Jails July 2016
15. California Coalition for Mental Health - Correctional Mental Health Care September 2016
16. San Diego Organization of Healthcare Leaders(SOHL) Correctional Healthcare and Information Technology: San Diego County Jails and San Diego Health Connect October 2016
17. American Correctional Health Services Association - Inmate Safety Program- San Diego Jails October 2016
18. Mental Health Services OAC: Jail Mental Health Services (Panel Discussion)- March 2017
19. Past Grand Jury Association- June 2017
20. Health Trained Deputy Sheriff Training- August 2017
21. California Crisis Intervention Training Association: Redesigning Medical and Mental Health Services in Jails- August 2017
22. Emergency Medical Oversight Committee(EMOC) Presentation: Medical and Mental Health Care in Jails- February 2018
23. Citizens Law Enforcement Review Board (CLERB): Future of Jail Medical and Mental Health Services February 2018
24. UC San Diego Department of Psychiatry Presentation: Correctional Medicine- March 2018
25. National Commission on Correctional Health Association – Evolution of a Suicide Prevention Protocol – April 2018
26. National Commission on Correctional Health Association – Hepatitis A Outbreak and a County Jail Response – April 2018
27. Mental Health Symposium- Jail Mental Health Expert Speaker – April 2018
28. Western American Correctional Health Services Association - Telemedicine In Correctional Healthcare- October 2018
29. National Commission on Correctional Health Association – Creating a TeleHealth Infrastructure for your Facility– October 2018

Alfred A. Joshua MD, MBA, FAAEM

## CERTIFICATIONS

American Board of Emergency Medicine: Board Certified Emergency Medicine Physician Exp: 10/2022

California Medical License  Issued 10/10/08  exp. 1/31/20

DEA #: Ask if needed  exp. 12/2020

NPI #: Ask if needed

Lean Six Sigma Practitioner Awarded: 2/2012

Certified Correctional Health Professional(CCHP)  9/2017

Certified Correctional Health Professional- Physician(CCHP-P) 11/2017

## PROFESSIONAL SOCIETY MEMBERSHIPS

- American Medical Association (AMA)

- American Correctional Health Services Association (ACHSA)

- National Commission on Correctional Healthcare Association (NCCHCA)

- American College of Correctional Physicians (ACCP)

- American Academy of Emergency Medicine (AAEM)

# Alfred Joshua, MD, MBA, CCHP-P, FAAEM

# P.O. Box 5000 PMB 525 Rancho Santa Fe, CA 92067

## I. INTRODUCTION

My name is Alfred Joshua, MD, MBA, CCHP-P, FAAEM. My business address is P.O. Box 5000 PMB 525 Rancho Santa Fe, CA 92067. I was retained by Defendant Law Office of LYNBERG & WATKINS at the request of Attorney Tamara Heathcote on case <u>Kangas v. County of Orange et al.</u> (Case No.8:18-cv-02063-JVS-DFM) My rate for consulting is $450 per hour and for court or deposition testimony is $600 per hour.

## II. BACKGROUND AND EDUCATION

I received my Doctor of Medicine from the State University of New York, Syracuse (Upstate University), and completed my post-graduate residency training at UC San Diego Emergency Medicine Residency program in San Diego. I completed a two-year fellowship in Hospital Administration at UC San Diego under the mentorship of the CEO, CMO and President of the Medical Group. I have been a licensed Physician and Surgeon in the State of California and have maintained my board certification in Emergency Medicine (ABEM) since July 2012. I have worked in the healthcare industry as an emergency medicine physician, primary care, detoxification services, and correctional medicine and administration. Additionally, I have a Master of Business Administration (MBA) degree from the University of California, Irvine. I received a Certification for Certified Correctional Health Professional (CCHP) from National Commission of Correctional Healthcare (NCCHC). I have also received the CCHP physician specialty certification (CCHP-P) upholding the highest standards of correctional healthcare There are only around 70 correctional physicians across the country who have received the designation as of November 2017.

### A.    Professional Experience

I was selected in 2013 to lead the San Diego County Sheriff's Medical Services Division as Chief Medical Officer to design and manage a medical system that provides comprehensive medical care for the 91,000+ inmate/patients who are annually booked with a daily census of 5,800+ inmate/patients who are housed at seven detention facilities throughout the San Diego region covering 4,562 square miles. I have been designing an innovative managed care model for the county jails. I led the creation of a Managed Care Department for central utilization review within the Sheriff's Department and established new value-based hospital contracting in inpatient and outpatient medical care over past two years. I have revised or created 50+ Departmental Medical policies to standardize medical care across seven facilities as well as revising Sheriff's department medical and psychiatric formulary to improve quality of care for patients. I have redesigned Mental Health care with a new Inmate Safety Program that is

1

designed to reduce suicide deaths, attempts and safety cell placements. I have led the creation of a Telehealth program which provides and expedites timely access to outpatient specialty care for inmates. Prior to the Sheriff's Department, I served as the Senior Medical Officer in Healthcare Reform at Tri-City Medical Center and as Medical Director for Volunteers of America, a non-profit organization that assists the homeless and those rehabilitating from drugs and alcohol. I have completed a two-year hospital administrative fellowship at UC San Diego after completion of my emergency medicine residency. I have worked clinically in the Emergency department at UC San Diego and at Tri-City Medical Center and currently practice clinically at the Veterans Affairs Emergency Department. I served on the Board of Directors for San Diego Health Connect a leading national health information exchange platform located in San Diego and the Council of Mentally Ill Offenders (COMIO) and was appointed by the Speaker of the House of California in 2015.

In addition to the above, I had regularly met with other jail administrators and medical directors from several jurisdictions in Southern California to discuss emerging topics and best practices. I have served as a subject matter expert for the Medical/Mental Health Workgroup for Board of State and Community Corrections (BSCC) in 2016 to make the most recent revisions to Title 15 regulations, which govern jail correctional entities in the State of California. Since July 2018, I serve as a correctional healthcare consultant to assist organizations and entities with improving the quality and delivery of care for inmate populations. Starting February 2019, I serve as the Regional Chief Medical Officer for Alvarado Medical Center and Paradise Valley Hospital located in San Diego County.

     B. <u>Professional Memberships</u>

I am a member of the following organizations:

- American College of Correctional Physicians (ACCP)
- American College of Healthcare Executives (ACHE)
- American Academy of Emergency Medicine (AAEM)
- American Medical Association (AMA)
- American Correctional Health Services Association (ACHSA)
- National Commission on Correctional Healthcare Association (NCCHC)

## III. PRESENTATIONS

1. Public Safety Group CAO Quarterly Presentation Panel – Mental Health in Regards to Public Safety Realignment – February 2014
2. Neighborhood House Association – Mental Health Presentation – March 2014
3. Citizens Law Enforcement Review Board Presentation – Suicide Prevention Strategies – June 2014
4. Open Minds Presentation – Mental Health in San Diego County Jails – August 2014
5. California State Sheriffs' Association – Affordable Care Act – August 2014

6. National Commission on Correctional Health Association – Viewing Correctional Healthcare as a Payor – October 2014
7. Honorary Sheriff Deputy Association- Redesigning Medical and Mental Healthcare in San Diego County Jails: A life and death challenge 2015
8. Police Chief's Presentation: Redesigning Medical and Mental Healthcare: 5 Year Plan
9. San Diego Mental Health Coalition: Mental Health care in San Diego Jails – April 2015
10. Citizens Law Enforcement Review Board Presentation – Suicide Prevention Strategies – July 2015
11. Behavioral Health Advisory Board- Nov 2015
12. San Diego Law Society- Redesigning Mental Health Care in Jails Nov 2015
13. National Commission on Correctional Health Association – Inmate Safety Program – April 2016
14. Grand Jury Presentation- Mental Health San Diego Jails July 2016
15. California Coalition for Mental Health - Correctional Mental Health Care September 2016
16. San Diego Organization of Healthcare Leaders (SOHL) Correctional Healthcare and Information Technology: San Diego County Jails and San Diego Health Connect October 2016
17. American Correctional Health Services Association - Inmate Safety Program- San Diego Jails October 2016
18. Mental Health Services OAC: Jail Mental Health Services (Panel Discussion)- March 2017
19. Past Grand Jury Association- June 2017: Overview of Jail Medical and Mental Health Services
20. California Crisis Intervention Training Association (CCITA): Redesigning Medical and Mental Health Services in Jails August 2017
21. Health Trained Deputy Sheriff Training- August 2018
22. Emergency Medical Response Oversight Committee (EMOC): Jail Medical and Mental Health Service February 2018
23. UC San Diego Department of Psychiatry Presentation: Correctional Medicine- March 2018

## IV. PUBLICATIONS

1. Joshua A, Chan T., Castillo E.; A Tool for Emergency Department Throughput: Using Maximum ED Bed Time to Reduce Wait Times and the Number of Left Without Being Seen Patients Annals of Emergency Medicine 9/2010 (Abstract)
2. Nordt SP, Minns A, Carstairs S, Kreshak A, Campbell C, Tomaszewski C, Hayden SH, Clark RF, Joshua A, Ly BT:  Mass sociogenic illness initially reported as carbon monoxide poisoning.  J Emerg Med 2012;42(2):159-161.
3. Campbell, Joshua, Medak, et al. Is ultrasound-guided subclavian vein cannulation more successful than traditional methods? Academic Emergency Medicine. 2011; Blackwell Publishing Ltd. Vol 18(5) S211. (abstract)

3

4. Karla DW, Bovet J, Haynes B, Joshua A, et al. Training law enforcement to respond to opioid overdose with naloxone: Impact on knowledge, attitudes, and interactions with community members. *Drug and Alcohol Dependence* 2016

5. Degner N, Joshua A, et al. Comparison of Digital Chest Radiography to Purified Protein Derivative for Screening of Tuberculosis in Newly Admitted Inmates. Journal of Correctional Healthcare 2016 Vol. 22(4) 322-330

**Book Chapters:**

1. Joshua A:   Blunt neck trauma.   In: <u>Rosen and Barkin's 5-Minute Emergency Medicine Consult</u> (fourth edition).   Schaider J, Hayden SR, Wolfe R, Barkin RM, Barkin A, Shayne P, Rosen P (Eds.); Philadelphia: Lippincott Williams & Wilkins, 2010,

2. Joshua A:   Subarachnoid hemorrhage.   In: <u>Rosen and Barkin's 5-Minute Emergency Medicine Consult</u> (fourth edition).   Schaider J, Hayden SR, Wolfe R, Barkin RM, Barkin A, Shayne P, Rosen P (Eds.); Philadelphia: Lippincott Williams & Wilkins, 2010

3. Joshua A:   Abdominal Imaging, Trauma.   In: <u>Rosen and Barkin's 5-Minute Emergency Medicine Consult</u> (fourth edition).   Schaider J, Hayden SR, Wolfe R, Barkin RM, Barkin A, Shayne P, Rosen P (Eds.); Philadelphia: Lippincott Williams & Wilkins, 2013

**V. CASES** (Involving Deposition or Trial Testimony)

1. Brummett v. County of San Diego (Deposition and Trial testimony) November 2014 (CASE NO. 12-CV-1428-BAS (BGS)

2. Torbert vs County of San Diego (Trial Testimony)- December 2015 (CASE NO. 11-CV-2953-DMS (WMC)

3. The Estate of Ruben Nunez vs. County of San Diego (Deposition)- May 2017 (CASE NO. 16-CV-1412-BEN (MDD)

4. Williams v. Gore (Trial Testimony)- June 2017 (CASE NO. 15-CV-0654-AJB(PCL)

5. Howze v. USA, U.S. District Court for the Eastern District of Arkansas (Deposition)- June 2017 (Case No. 2:16-CV-0003)

6. Jones v. Gardiner (Trial Testimony)- October 2017 (CASE NO. 14-CV-2477-MMA(MDD))

7. Turner v. County of San Diego (Trial Testimony)- January 2018 (CASE NO. 17-CV-285-WQH-MDD)

8. Villalon v. Cameron County (Deposition)- February 2018 (CASE NO. CA NO 1:15-cv-00161)

9. NeSmith v County of San Diego (Deposition) February 2018 (CASE NO. 3:2015cv00629)

10. Nagy v County of Orange (Deposition) March 2018 (CASE NO. 30-2015-00827446-CU-PP-CJC)

11. Scott et al. v Clarke et al. (Deposition) April 2018 (CASE NO. 3:12-cv-36)

12. Russell v County of Orange (Deposition) May 2018 (CASE NO. 17-cv00125 JLS (DFM)

13. The People v Avignone et al. (Hearing) May 2018 (Super Ct. SCD250640)

14. Scott et al. v Clarke et al. (Trial Testimony) June 2018 (CASE NO. 3:12-cv-36)

15. Scott et al. v Clarke et al. (Trial Testimony) June 2018 (CASE NO. 3:12-cv-36)

16. Nishimoto v County of San Diego (Deposition)- November 2018 (CASE NO. 3:16-cv-01974-BEN-JMA)

17. Parker v Christian County (Deposition)- March 2019 (CASE NO. 6:17-cv-03154)

18. Gordon v County of Orange (Deposition)- May 2019 (CASE NO. SACV 14-01050 CJC (DFMx)

19. Nagy v County of Orange (Deposition)- May 2019 (CASE NO. 30-2015-00827446-CU-PP-CJC)

20. Coy v Corizon Inc et al. (Deposition)- December 2019 (CASE NO. 14-CI-02076)

21. Estate of Ruth Freiwald v Adeyemi Fatoki et al. (Deposition)- February 2020 (CASE NO. 18-CV-896)

22. Washington v Kohl's Department Stores et al. (Deposition)- March 2020 (CASE NO. 5-19-cv-00397-JGB-SHK)


**VI. MATERIALS REVIEWED**

In preparation for forming the opinions expressed below, in addition to my experience in the correctional healthcare field, I have reviewed the following materials:

1. Second Amended Complaint (29 pages)
2. National Commission of Correctional Health Standards, Jails 2014
3. Orange County Jail and Global Medical Records (107 pages)
4. GGPD Records (21 pages)
5. Investigative Summary (12 pages)
6. Plaintiff Interrogatories (21 pages)
7. Policies and Procedures and Standard Nursing Protocols (221 pages)
8. Court Order (6 pages)
9. Interrogatories Set One (19 pages)
10. Def Response to Plaintiff RPD Set One (67 pages)
11. Def County Response to Plaintiff Set One (18 pages)

12.    Interview of Dr. Nishu Karki (3 pages)
13.    Interview of James Castro, Paramedic (3 pages)
14.    Interview of Ashley Szmania RN (3 pages)
15.    Interview of Jagdish Chopra (3 pages)


## VII. SUMMARY OF DOCUMENT REVIEW

| DATE | SUMMARY OF EVENT |
|------|------------------|
| May 13, 2017 | @20:40: Mr. Kangas booked in Central Men's Orange County jail for vandalism related charges<br>@23:30: Mr. Kangas exhibiting signs of alcohol withdrawal and episode of hematemesis. @23:44 sent out via ambulance to Orange County Global Medical Center |
| May 14-16, 2017 | Hospitalized at Orange County Global Medical Center and diagnosed with cirrhosis of the liver, alcohol withdrawal management, and s/p banding procedure for esophageal variceal bleeding |
| May 16, 2017 | @22:33: discharged from hospital back to Orange County Central Men's Jail. Mr. Kangas housed in Medical Observation Unit. |
| May 21, 2017 | @13:30: Mr. Kangas approaches nurse's window complaining of splitting headache. Given Tylenol by RN Chopra. Mr. Kangas vomiting and given Zofran. Had vitals taken and based on presentation NP Raineri contacted to assess Mr. Kangas. Vitals taken and Mr. Kangas indicated to go to bathroom. Altered level of consciousness and NP Raineri contacted again. Mr. Kangas placed in wheelchair and continued altered level of consciousness. Mr. Kangas then becomes unresponsive and paramedics called.<br>@14:14: Paramedics arrived on scene and found Mr. Kangas breathing, unresponsive, nonverbal. Mr. Kangas sent out and arrives @14:43 at Orange County Global Medical Center Emergency department and seen by Dr. Karki. CT Head done which showed large left subdural hematoma with midline shift. Platelets-109 and derangements in coagulation profile (INR-1.4) noted on labs. Physical exam showed pupils unequal and nonresponsive to light. No exterior injuries or trauma noted on physical exam. Neurosurgeon consulted and poor candidate for intervention or surgery. Admitted to Intensive Care Unit. |
| May 23, 2017 | Mr. Kangas taken off life support by family |

## VIII. OPINION

Based on my review of the documents provided, and my education and training, as well as administrative and clinical experience in both the correctional health care and hospital setting, it is my opinion that that the jail clinical staff and Orange County Sheriff's Department met the standard of care in the treatment of Mr. Kangas while he was incarcerated for 10 days.

Mr. Kangas was a 69-year-old male who suffered from end stage liver disease, esophageal varices from alcohol abuse, and Post traumatic stress disorder prior to being incarcerated on May 13, 2017 for charges related to vandalism. Prior to being incarcerated, based on the arrest report, there were numerous domestic disturbances where police were called to his residence. Within three hours of getting booked into the Men's Central Jail, Mr. Kangas was sent out to Orange County Global Medical Center (OCGMC) for hematemesis (vomiting blood) and was found to have esophageal variceal bleeding and underwent a banding procedure. This condition (esophageal varices) and episode(acute variceal bleeding) carries a high mortality risk. He returns to the jail three days later. However, even upon return he has elevated risks for morbidity related to end stage liver disease and coagulopathy from impaired liver function. Based on the arrest report, Mr. Kangas resided with his wife and did not have skilled nursing needs for activities of daily living or daily home health for his end stage liver disease. It is also clear from the report, he suffered from long standing alcohol abuse. This is likely the cause of his end stage liver disease. Mr. Kangas suffered a much higher risk of mortality associated with decompensated end stage liver disease as evidenced by his episode of variceal esophageal bleeding. 60-70% experience a rebleed within one year and of those individuals it carries a 33% mortality rate. The five-year survival rate for end stage liver disease is poor unless there is a liver transplant. However, based on the records and alcohol withdrawal, it appears he was having severe alcohol abuse at the time of arrest and would not be a candidate for liver transplant.

The jail clinical staff did not create conditions where Mr. Kangas suffered a large subdural hematoma which ultimately caused his family to withdraw life support measures. These conditions were caused by long standing alcohol abuse. Alcohol abuse can lead to cerebral atrophy where more space between the skull and brain occur which can allow blood to accumulate even with minor trauma or spontaneously. In addition, the liver is responsible for synthetic coagulation factors that help form a secondary blood clot to stop bleeding. When this is impaired, even minor trauma can cause prolonged bleeding. Mr. Kangas also had low platelets which would have prolonged his bleeding time from inability to effectively create a primary blood clot to stop bleeding. However, during the interviews with paramedic, OCGMC Physician, and Jail Registered Nurse, no one noted any signs of trauma or injury. The two falls he had in jail did not result in any direct head trauma. Thus, it is more than likely that he suffered from a spontaneous subdural hematoma or even from minor motion that could not be prevented under the best of assistance. His underlying coagulopathy was noted when he arrives in the Emergency department on May 21 where his INR was 1.4 and platelets of 109 which showed impaired ability to stop bleeding with a primary or secondary clot.

Based on my review of the records there is no evidence that the Orange County Jail nursing, clinical staff, or deputies deliberately ignored Mr. Kangas' medical condition. He was appropriately housed in the Medical Observation Unit when he returns from Orange County Global Medical Center (OCGMC). His two falls that were seen on video did not show any direct head trauma that could have caused immediate intracranial hemorrhage from the injury. Mr. Kangas suffered from alcohol abuse and thus displayed alcohol withdrawal symptoms which was appropriately monitored by the jail clinical staff when he returns from OCGMC. The Orange County Jail clinical staff did not rely on other sick inmates for the care and mobility assistance of Mr. Kangas. Mr. Kangas was seen and cleared by OCGMC and did not have skilled nursing facility needs that were identified in this discharge plan for assistance with activities of daily living. The clinical staff was appropriately supervised and had adequate training to deal with Mr. Kangas' comorbidities. The policies and procedures of Orange County Men's Central Jail meet the national standards of correctional healthcare and were appropriately followed by clinic staff.

My opinions in this case are given within a reasonable degree of medical probability and is based on my experience in the correctional health field and clinical arenas, and upon the documentation provided to me for review. My opinions have never been disqualified in court. I reserve the right to change this opinion in the event additional documentation is provided in this matter.


Executed on April 9, 2020 in San Diego, California

_____
Alfred Joshua, MD, MBA, CCHP-P, FAAEM

8

Case Name: ***Kangas v. County of Orange, et al.***
Case No.:      8:18-CV-02063-JVS-DFM

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 1100 Town & Country Rd., Suite 1450, Orange, California 92868.

On **December 29, 2020**, I served the foregoing document(s) described as **DEFENDANTS' EXPERT DISCLOSURES PURSUANT TO FED. R. CIV. PROC. 26(a)(2)(A)** on the interested parties by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

### SEE ATTACHED SERVICE LIST

☒    **BY MAIL**: As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, I deposited such envelope in the mail at Orange, California.

☐    **BY E-SERVE:** The above listed document(s) were electronically served via the USDC Central District's CM/ECF system and the Notice of Electronic Filing (NEF) indicates the registered party and/or attorney were served with the above documents.

☒    **BY ELECTRONIC MAIL:** I caused all of the pages of the above-entitled document to be sent to the recipient(s) noted at the respective email address(es) indicated.

☐    **BY FACSIMILE:** I caused all of the pages of the above-entitled document to be sent to the recipient(s) noted via facsimile at the respective telephone numbers indicated above.

☐    **BY FEDERAL EXPRESS/OVERNIGHT MAIL**: I caused the above-described document to be served on the interested parties noted as follows by Federal Express/Overnight Mail.

☐    **BY PERSONAL SERVICE**: I caused such envelope to be delivered by hand to the office(s) of the addressee via messenger.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **December 29, 2020**, at Orange, California.

_____
**JILL ADAIR**

1

## <u>SERVICE LIST</u>

2

3   Cameron Sehat, Esq.
    THE SEHAT LAW FIRM
4   19800 MacArthur Boulevard, Suite 1000
    Irvine, CA  92612
5   T:  949 825-5200
    F:  949 313-5001
6   cameron@sehatlaw.com

7

8   Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28